EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

GENERAL ELECTRIC COMPANY,
Defendant.

Civ. A. No. 73-C-23-L.

United States District Court,
W. D. Virginia,
Lynchburg Division.

May 22, 1974.

Jeffrey S. Rosen, EEOC Regional Litigation Center, Philadelphia, Pa., for plaintiff.

John S. Battle, Jr., Edward R. Slaughter, Jr., McGuire, Woods & Battle, Charlottesville, Va., for defendant.

## OPINION

TURK, Chief Judge.

This is a suit brought by the Equal Employment Opportunity Commission (EEOC) against General Electric Company (defendant) pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(1) and (3), as amended by Public Law 92–261 (March 24, 1972). The EEOC's complaint is framed in two counts which allege that defendant has intentionally engaged in and is now intentionally engaging in discriminatory employment practices based on (1) race and (2) sex, both of which are in violation of Title VII of the Civil Rights Act of 1964, as amended. The case is now before the court on the defendant's motion for summary judgment as to the second count of the complaint (sex discrimination). The question presented by this motion is whether the jurisdictional prerequisites have been satisfied with respect to the sex discrimination count in the complaint. The facts material to the resolution of this question are not in dispute and have been made part of the record in the form of answers to interrogatories and various documents, thus making the question ripe for summary judgment at this time.

On May 19, 1969, Herman Ford, a black employee at General Electric Plant in Lynchburg, Virginia, filed a charge with the EEOC alleging that a white employee less qualified than himself was promoted to foreman and that the reason he was not considered for this job was because of his race. He further alleged that he was not fairly considered for a job in the personnel department despite the fact that he met the qualifications. Following an investigation of these charges, the EEOC rendered an opinion on May 11, 1972, finding reasonable cause to believe that defendant had violated Title VII by denying Mr. Ford and negroes as a class entry into supervisory positions, by constructively discharging Mr. Ford and by maintaining discriminatory hiring standards. The EEOC also found on the basis of its investigation reasonable cause to believe that defendant violated Title VII by utilizing arrest records information with respect to job applicants.

Meanwhile, on September 22, 1969, Scott Slaughter, a black man, had filed a charge with the EEOC alleging that defendant had refused to hire him because of his race. On August 31, 1970, Ms. Gwendolyn Wells, Director of the Commission, Washington, D.C. Area Office, issued findings of fact regarding Mr. Slaughter's charge of racial discrimination. Thereafter, on December 27, 1971, the EEOC through its Director of Compliance, Eduardo Pena, Jr., rendered an opinion concluding that defendant had not discriminated against Mr. Slaughter on account of his race in refusing to hire him. But the EEOC went on to amend Ms. Wells findings of fact from the records acquired during the investigation of Mr. Slaughter's charge. The amendments were as follows:

"10. As part of its hiring procedures, Respondent utilizes two different sets of test [sic] for male and female applicants. Male applicants are administered three tests—Wonderlic, Numerical (Arithmetic), and Mechanical Comprehension. Female applicants are adminis-

tered two tests—Wonderlic and Peg Board (Manual Dexterity).

11. Respondent's written hiring policy reads in part: 'The only test for prospective female assembly operators that we assign any great weight to is the peg board (manual dexterity). In the instance of male candidates, mechanical comprehension and arithmetic ability are given some weight."

Then, on the basis of these additional findings of fact, the EEOC, through Mr. Pena, rendered a decision holding that there was reasonable cause to believe that the defendant had violated Title VII by using pre-employment testing which discriminates against Blacks and females as a class; by maintaining sex-segregated job classifications; and by using a credit check policy and arrest record inquiry which discriminates against Blacks as a class. It is the above conclusions with respect to discrimination against females which are the basis of the second count of the EEOC's complaint and hence the subject of this motion for summary judgment.

Conciliation efforts began with respect to the determinations reached in the investigation of Mr. Ford's charge on June 2, 1972, but were terminated without success on October 26, 1972. In the case of the Slaughter decision, negotiations began on February 18, 1972, and were terminated on March 8, 1972. The EEOC has submitted a letter dated February 18, 1972, from defendant's counsel to the EEOC with regard to a conciliation meeting in the Slaughter case in which it is stated that defendant is perfectly willing to sit and discuss the matters raised in the decision. The parties apparently concede that the issue of sex discrimination was discussed, but the court notes that in the aforementioned letter defendant's counsel reserved the right to object to further unrelated charges being imposed above and beyond the original charge of racial discrimination.

The question presented is whether the EEOC was authorized to bring suit on the charge of sex discrimination in light of the aforementioned facts. Consideration of this question begins with the statutory scheme established by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by Public Law 92–261 (March 24, 1972), (hereinafter Title VII). The Act generally forbids as "unlawful employment practices" discrimination by employers, employment agencies and labor organizations on account of an individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2. The Act created the Equal Employment Opportunity Commission to enforce the substantive prohibitions of the Act by various means. 42 U.S.C. § 2000e–4. The basic procedures utilized in enforcing the Act are set forth in relevant part at 42 U.S.C. § 2000e–5 as follows:

"(b) Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer . . . has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer . . . (hereinafter referred to as 'respondent') within ten days and shall make an investigation thereof. . . . If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. . . If the Commission determines after such investigation that there is reasonable cause to believe the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. . . .

.    .    .    .    .    .

(e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter. . . .

(f)(1) If within thirty days after a charge is filed with the Commission . . . the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency or political subdivision named in the charge. . . . If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. . . ."

Also relevant to the issue in this case is 42 U.S.C. § 2000e–8(a) which states:

In connection with any investigation of a charge filed under section 2000e–5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation."

■ Initially, the court notes that the statutory scheme of Title VII contemplates some relationship between the original charge and a suit subsequently filed by the EEOC. See Graniteville Co. v. Equal Employment Opportunity Commission, 438 F.2d 32 (4th Cir. 1971). This is obvious from the context of § 2000e–5(f)(1) which allows the EEOC to file a civil action "thirty days *after a charge is filed*" against the party "*named in the charge*". Likewise, the notice and conciliation requirements of § 2000e–5(b) and (e) would serve no function in a case in which an employer were later sued for reasons unrelated to the charge. And finally § 2000e–8(a) which guarantees the EEOC access to evidence relevant to the charge under investigation indicates that the scope of the EEOC's enforcement efforts will be related to the charge. The question is simply the degree of the relationship required.

In King v. Georgia Power Co., 295 F. Supp. 943 (N.D.Ga.1968) the court discussed the scope of a judicial complaint in a Title VII case in relation to the administrative charge and adopted the following rule:

"The correct rule is that the complaint in the civil action is confined to those issues the original complaint [sic] has standing to raise, but may properly encompass any such discrimination like or reasonably related to the allegations of the charge and growing out of such allegations during the pendency of the case before the Commission." 295 F.Supp. 947.

The rationale of this rule was stated in terms of the logic of the statutory scheme established by Title VII in that the emphasis on voluntary compliance in the statute would be subverted if the issues raised during conciliation efforts could not later be the subject of a civil suit. In Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970) the Court of Appeals for the Fifth Circuit followed the decision in *King* and stated the rule as "the 'scope' of the judicial

complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." 431 F.2d at 466.

Although the above stated rules were formulated in cases brought by private parties, the court is of the opinion that they are equally applicable to a case such as that at bar brought by the EEOC. But the court cannot agree that the above standards support the count of sex discrimination in the case at bar. The EEOC advances the position that "once defendant's hiring and promotion policies were put in issue regarding blacks, they were necessarily put in issue regarding all employees." This argument strikes the court as going at least somewhat further than the rule in *King*, supra, by ignoring any requirement of standing.

■ This court is of the opinion that since a suit under Title VII brought by the EEOC must be based on a charge, the issues raised in the suit must be limited to claims which might have been raised by the charging party. To adopt the EEOC's position without such a limitation would be to allow suit on grounds unrelated to the charge filed with it and which could not reasonably have been expected to grow out of the charge of discrimination. In the case at bar, the allegations of sex discrimination against females grew out of a charge of racial discrimination in hiring filed by a black man. The EEOC fails to explain how this reasonably could have been expected.[1]

■ In contrast, if the allegations of sex discrimination against females had developed from an investigation of a charge of racial discrimination by a black female, the court could perhaps hear the case regardless of whether or not the specific charging party herself had been the victim of sexual discrimination. This is because one would reasonably expect the EEOC to recognize that a charging party might incorrectly state in a charge the type of discrimination to which the charging party might have been subjected.[2] Thus as the court noted in *Sanchez*, the remedial purposes of Title VII would hardly be served by requiring possibly inarticulate and unsophisticated working people for whom the statute was designed to protect to correctly state the precise type of discrimination in their charge to the EEOC in order to later bring suit on a different type of discrimination. This court agrees with *Sanchez* that the crucial element in a charge is the factual allegations and not the legal conclusion initially attached to the allegations. But as a caveat to this proposition, this court is of the opinion that the discrimination uncovered must at least have had the *potential* of prejudicing the charging party in order to be the subject of a later suit growing out of the charge. This follows from the scheme of Title VII which appear to clearly require a relationship between the charge, the investigation and the suit.

The case of Latino v. Rainbo Bakers, Inc., 358 F.Supp. 870 (D.Colo.1973), relied upon by the EEOC is readily distinguishable in light of the above discussion. In *Latino* the plaintiff, a female, had filed a charge with the EEOC alleging discrimination on account of her national origin, but the EEOC investigation had found reasonable cause to be-

---

1. The EEOC's allegations of sex discrimination in Count II are not even limited to discrimination against females in hiring but also include allegations of discrimination against females in promotion and transfer. Although all of the allegations of sex discrimination resulted from the investigation of Mr. Slaughter's charge of racial discrimination in hiring, for purposes of this suit the EEOC apparently relates the allegations of sex discrimination in promotion and transfer to the charges filed by Mr. Ford.

2. The fact that the EEOC determined that there was no reasonable cause to believe that Mr. Slaughter's charge was true is thus not a crucial factor for purposes of this suit. The significant factor is whether he might have been subjected to type of discrimination alleged in the suit regardless of whether he was or not.

lieve she had been the victim of sexual discrimination. The court rejected the defendant's argument that the discrepancy in the initial charge and the subsequent suit was fatal in terms of the purposes of the procedures established by Title VII. This court agrees with *Latino* on its facts but does not find it to be authority for the EEOC's position in this case. The obvious distinguishing difference between *Latino* and the case at bar is, of course, that the EEOC there found reasonable cause to believe that the charging party had been the victim of sexual discrimination whereas in this case there is not even a potential relationship between the charging parties and the allegations of sexual discrimination against females. The rationale of the decision in *Latino* was that the purposes of the notice and conciliation requirements in Title VII, 42 U.S.C. § 2000e–5, were satisfied through the notice in the EEOC decision finding possible sexual discrimination against plaintiff and the subsequent opportunity to conciliate with respect to this issue. While this rationale fits comfortably with the facts in *Latino*, it is not dispositive of the case at bar, for in the opinion of the court, in addition to notice and an opportunity to conciliate, Title VII contemplates at least a potential link between the allegations in the complaint and the charging parties. Accordingly, the fact that the allegations of sex discrimination against females in this complaint were not potentially discriminatory against the charging parties leads this court to conclude that the EEOC is without authority to judicially pursue these allegations in this compliant. Equal Employment Opportunity Commission v. Hickey-Mitchell Co., 372 F.Supp. 1117 (E.D.Mo.1973); accord, Equal Employment Opportunity Commission v. New York Times Broadcasting Service, 364 F.Supp. 651 (W.D.Tenn.1973).

■ Having concluded the allegations of sex discrimination in this case are not properly before the court at this time does not mean that the EEOC is without power to seek to remedy alleged violations not potentially related to the charging parties which are brought to its attention during the course of an investigation. The remedial purposes of Title VII would obviously not be served by such a limitation. What the statute does in such a case is to allow a member of the Commission to file a charge and trigger the administrative machinery which may result in a civil suit. The EEOC's power to file charges is recognized in its own regulations, 29 C.F.R. §§ 1601.5 and 1601.10 with the limitation at 29 C.F.R. § 1601.196(c) that a member of the Commission who files a charge may not participate in the determination of that case.[3] The court is of the opinion that this procedure should have been followed in the case at bar with respect to the sex discrimination charges.

■ The EEOC argues that because defendant received notice of the sex discrimination issue in the opinion rendered in the Slaughter case on December 27, 1971 and was given the opportunity to voluntarily comply, it cannot now claim prejudice. This argument is unacceptable for two reasons. First, although defendant did agree to discuss the matters raised in the Slaughter decision on February 18, 1972, it specifically reserved the right to object to the unrelated charges being imposed by the Commission, thus in effect notifying the EEOC of its objection to the EEOC failing to file a separate charge with respect to sex discrimination. Secondly, there is clearly a potential for prejudice resulting from the EEOC adding the sex discrimination charges to the Slaughter decision since back pay liability does not accrue from a date more than two years

3. In the case at bar, the amended findings of fact relative to the sex discrimination against females were added by Director of Compliance Pena in the same opinion which found reasonable cause to believe that de-

fendant was guilty of sex discrimination. Thus by proceeding as it did instead of filing a separate charge of sex discrimination the EEOC avoided the procedural protection provided by 29 C.F.R. § 1601.19b(c).

prior to the filing of a charge with the Commission. 42 U.S.C. § 2000e–5(g). By adding the sex discrimination charges to the Slaughter decision, the EEOC made defendant potentially liable to its female employees from September 22, 1967 whereas had the EEOC filed new charges at the time it rendered its decision defendant would have been potentially liable only from December 27, 1969. The EEOC's failure to follow the procedure contemplated by Title VII and its regulations is clearly of enough significance to justify defendant's objection to the second count in the complaint. See United States v. Heffner, 420 F.2d 809, 811 (4th Cir. 1969); Equal Employment Opportunity Commission v. Firestone Tire and Rubber Co., 366 F. Supp. 273 (D.Md.1973).

For the aforementioned reasons, defendant's motion for summary judgment as to Count II of the complaint will be granted without prejudice to the plaintiff as to the merits of this count.