### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### v.
### WESTERN ELECTRIC COMPANY, INC.
### Civ. A. No. 73–448–N.

United States District Court,
D. Maryland.

Aug. 15, 1974.

As Amended Sept. 26, 1974.

William A. Carey, Gen. Counsel, William L. Robinson, Associate Gen. Counsel, EEOC, Washington, D. C., Delores Wilson, Regional Atty., Thomas Gibson, Associate Regional Atty., Raymond D. Goodman, and Joseph D'Arrigo, Asst. Regional Attys., EEOC, Philadelphia Regional Litigation Center, Philadelphia, Pa., and George Beall, U. S. Atty., and James M. Kramon, Asst. U. S. Atty., for the District of Maryland, for plaintiff.

Michael Hertzberg, New York City and Leonard E. Cohen and Monte Fried, Baltimore, Md., *for defendant.*

NORTHROP, Chief Judge.

This is a suit brought by the Equal Employment Opportunity Commission (hereinafter EEOC or Commission) against the Western Electric Company (hereinafter defendant) pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) as amended by Public Law 92–261 (March 24, 1972) (hereinafter the Act). The complaint [1] alleges that defendant has intentionally engaged in and is now intentionally engaging in unlawful employment practices which discriminate against blacks and women in violation of Title VII. The case is now before the Court on defendant's motion for summary judgment and partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The facts material to the resolution of the issues in this case have been made part of the record through answers to interrogatories and various documents.

On August 8, 1972, Cornelius Gaines, a black employee at the Western Electric plant in Baltimore, filed a charge with the EEOC alleging that he has been discharged from his job for insubordination and believed it was because of his race. He stated that a white employee, who had engaged in similar prohibited conduct, received only a ten-day suspension. The charge was deferred to the Maryland Commission on Human Rela-

1. Plaintiff filed an amended complaint after this Court granted Western Electric's motion to dismiss. Equal Employment Opportunity Commission v. Western Electric Co., 364 F.Supp. 188 (D.Md.1973).

tions for investigation. On September 8, 1972, the Baltimore District Office of EEOC was advised by letter that the State Commission had terminated its proceedings, and the charge was "officially" filed with the EEOC on that date. Thereafter, on September 13, 1972, notice of the charge was served by regular mail on the defendant.

An investigation ensued which took the form of interrogatories propounded to the defendant. No personal interviews were conducted with personnel of Western Electric nor were any tours of the plant made. Information was gathered by defendant, and answers were compiled and forwarded to the EEOC. On January 31, 1973, Western Electric was notified that the EEOC had determined that there was reasonable cause to believe that the defendant had engaged in unlawful employment practices and invited it to participate in conciliation discussions. It further advised defendant that if it failed to communicate its intent to participate in such discussions within seven days of receipt of the letter, the Commission would interpret such failure as indication that defendant did not wish to conciliate. The matter would then be referred to the EEOC's General Counsel for appropriate action. Western Electric did not respond to this correspondence. Pursuant to Regulation 1601.25, the Commission sent a second letter, dated February 22, 1973, stating that since defendant failed to avail itself of the EEOC's invitation, it concluded that defendant did not wish to engage in conciliation discussions. It further stated that the Commission intended to advise the charging party of his right to request a Notice of Right to Sue in the federal court, and that the case was being forwarded to General Counsel. The letter did not state that the defendant had a specified period of time within which it could make a written request to resume conciliation efforts before suit would be brought. On February 22, 1973, the EEOC notified Mr. Gaines of his right under § 706 to bring suit against the defendant, but this was not pursued. The instant case was instituted on May 7, 1973.

In its motion for summary judgment, Western Electric alleges that: (1) the notice of the charge sent by the Commission did not contain the name of the charging party and incorrectly stated the place of violation; (2) the Commission failed to institute suit within 180 days after the charge was filed; (3) the Commission failed to conduct a sufficient and/or proper investigation of the charge; and (4) the Commission failed to send a "last chance" notice pursuant to Commission Regulation 1601.23.

I.

Under § 706(b) of the Act, the EEOC is required to serve the defendant with a notice of the charge of discrimination within ten days of its filing. While conceding that it received timely notice, Western Electric contends that the notice did not contain the name of the charging party and that it incorrectly stated the place of violation.

This issue needs little discussion. Section 706(b) provides that ". . . the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on [the] employer . . .." There is no requirement that the charging party be named. Moreover, the EEOC's own regulations explicitly state that "[u]nless otherwise determined by the Commission, the notice shall not identify the person filing the charge or on whose behalf it was filed." [29 C.F.R. § 1601.-13]. Where a question of statutory construction arises, great deference is accorded to the interpretation given the statute by the agency charged with its administration. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). When that deference is accorded here, the unambiguous language of the EEOC's regulations support a conclusion that the requirements have been met.

The Commission's incorrect statement of the place of violation is an unfortunate case of carelessness. Because of the serious nature of a charge of discrimination, the Commission should strive for accuracy in its notice to a defendant. However, such error certainly does not require summary judgment.

II.

Defendant next argues that § 706(f)(1) of the Act limits the EEOC's power to bring suit to 180 days from the date the charge is filed with the Commission. Section 706(f)(1) provides in pertinent part:

> If within thirty days after a charge is filed with the Commission . . ., the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent . . . named in the charge. . . . The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission . . . . If . . . within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. . . . Upon timely application, the court may, in its discretion, permit the Commission . . . to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending . . . further efforts of the Commission to obtain voluntary compliance.

The precise meaning of this language has been argued before a number of district courts and has produced a clear split in authority.[2] The arguments for both sides were exhaustively set forth in Equal Employment Opportunity Commission v. Union Oil Co. of California,

2. The following decisions hold that the 180-day time period is not a statute of limitations restricting the right of the EEOC to file suit: Equal Employment Opportunity Commission v. Christiansburg Garment Co., 376 F.Supp. 1067 (W.D.Va.1974); Equal Employment Opportunity Commission v. E. I. duPont de Nemours & Co., 373 F.Supp. 1321 (D.Del.1974); Equal Employment Opportunity Commission v. Huttig Sash & Door Co., 371 F.Supp. 848 (S.D.Ala.1974); Equal Employment Opportunity Commission v. United States Industries, Inc., 7 EPD ¶ 9068 (W.D.Tenn.1974); Equal Employment Opportunity Commission v. Eagle Iron Works, 367 F.Supp. 817 (S.D.Iowa 1973); Equal Employment Opportunity Commission v. Duff Bros., Inc., 364 F.Supp. 405 (E.D.Tenn. 1973); Equal Employment Opportunity Commission v. Hickey-Mitchell Co., 372 F. Supp. 1117 (E.D.Mo.1973); Equal Employment Opportunity Commission v. Mobil Oil Corp., 362 F.Supp. 786 (W.D.Mo.1973); Equal Employment Opportunity Commission v. Bartenders International Union, Local 41, 369 F.Supp. 827 (C.D.Cal.1973).

Holding that the Commission is barred from bringing suit 180 days after a charge is filed are: Equal Employment Opportunity Commission v. United States Pipe & Foundry Co., 375 F.Supp. 237 (N.D.Ala.1974); Equal Employment Opportunity Commission v. Kimberly-Clark Corp., 7 FEP Cases 666 (W.D.Mo.1974); Equal Employment Opportunity Commission v. Berman Brothers Iron & Metal Co., 7 EPD ¶ 9212 (N.D.Ala.1974); Equal Employment Opportunity Commission v. Griffin Wheel Co., 7 EPD 9202 (N.D. Ala.1974); Equal Employment Opportunity Commission v. Union Oil Co. of California, 369 F.Supp. 579 (N.D.Ala.1974); Equal Employment Opportunity Commission v. Louisville & Nashville Railroad Co., 368 F.Supp. 633 (N.D.Ala.1974); Equal Employment Opportunity Commission v. Cleveland Mills Co., 364 F.Supp. 1235 (W.D.N.C.1973).

369 F.Supp. 579 (N.D.Ala.1974), and will not be outlined here. The source of much of this confusion is the legislative history of the Act. It is simply unclear as to what Congress intended. The 1972 amendments were the product of much compromise and consensus; the debate contains conflicting statements that are impossible to reconcile. Counsel on both sides have found statements supportive of their position.

Despite this lack of clarity, the Court finds itself in agreement with that line of authority holding that the 180-day time period is not a limit on the EEOC's power to bring suit. A number of factors dictate this conclusion. At the time the 1972 amendments were being considered, Congress was acutely aware of the considerable backlog of charges which had accumulated at the Commission since its creation. It was also cognizant of the fact that lengthy delays were involved in the processing of those charges. Thus the House Report accompanying the amendments stated:

> The Commission has stated, in testimony before this committee, that its caseload has increased even more rapidly than its projections had anticipated. . . . In the case of the Commission, the burgeoning workload, accompanied by insufficient funds and a shortage of staff, has, in many instances, forced a party to wait 2 or 3 years before final conciliation can be instituted. . . . [H.R.Rep.No. 92–238, 92nd Cong.2d Sess. 12, 1972; U.S.Code Cong. & Admin.News, p. 2147].

At the same time, it was recognized that the proposed 1972 amendments would expand the Commission's jurisdiction and workload. Under these circumstances, it is difficult to believe that Congress established a time limit for bringing suit which it knew that the EEOC could not meet. In effect, Congress would be significantly weakening the very strong powers it sought to confer. The majority of the charges filed with the EEOC would remain unprocessed thus, leaving aggrieved employees without the representation of the Commission. The end result would be that the employee would either bring suit individually, as he did prior to the 1972 Act, or refile his charge with the Commission. The latter action would constitute an enormous waste of resources and, in all likelihood, create administrative chaos within the Commission.

To adopt the construction urged by defendant would mean frustrating one of the essential purposes of the Act, that is, voluntary compliance. Under a strict filing rule of 180 days, the Commission would be unable to conduct a complete investigation of the charge and engage in meaningful conciliation. Equal Employment Opportunity Commission v. E. I. du Pont de Nemours & Co., 373 F.Supp. 1321 (D.Del.1974). It would be forced to file suit and litigate issues that might have been conciliated. The parties would from the outset assume antagonistic positions, a situation which the Act was attempting to avoid. Such an interpretation would also leave the entire process susceptible to the manipulation of the defendant. The alleged violator would have every incentive to slow down the administrative proceedings so that the 180-day period would expire before the EEOC could determine that conciliation efforts were unsuccessful. The administrative process could be easily extended beyond 180 days by a defendant which was dilatory in producing records or which pretended to bargain in good faith.

This Court believes that the correct interpretation of § 706(f)(1) was succinctly stated in Equal Employment Opportunity Commission v. Mobil Oil Corp., 362 F.Supp. 786, 792 (W.D. Mo.1973):

> The scheme established by the statute is simple. First, no one may sue within the first 30 days after a charge is filed. Secondly, between the 30th day and the 180th day only the EEOC may sue. Thirdly, after the 180th day (if notice is given to the aggrieved employee) both the EEOC and the aggrieved employee may sue.

*Accord:* Equal Employment Opportunity Commission v. Christiansburg Garment Co., 376 F.Supp. 1067 (W.D.Va. 1974); Equal Employment Opportunity Commission v. Huttig Sash & Door Co., 371 F.Supp. 848 (S.D.Ala.1974). The aggrieved party has 90 days after receiving notice from the EEOC in which to bring a civil action. If an individual suit is brought within that time, the Commission's right to sue is terminated and, thereafter, it may only intervene in the pending litigation. Once the Commission files suit, however, the aggrieved employee's sole remedy is intervention.

III.

A more serious challenge is made against the method and manner in which the EEOC conducted its investigation of the charge. Western Electric argues that the Commission did not follow the procedures outlined in an agency manual which call for personal interviews with the defendant and tours of its facilities. Instead, as part of a special pilot project, interrogatories were propounded by the Commission to defendant. Moreover, defendant asserts that the EEOC's use of *compulsory* interrogatories violated the discovery procedure established by the Act. In a cover letter forwarding the interrogatories, the Baltimore District Director of EEOC stated:

> . . . As part of its investigation, this Commission requires that you answer the enclosed questions and return them within fourteen days after receipt.
>
> Failure to respond to the interrogatory within fourteen days will constitute an admission on your part that the act complained of was discriminatory.

It is argued that the Commission does not have the power to require the defendant to answer interrogatories, nor does it have the right to compel answers by threatening to interpret silence as an admission of wrongful conduct. Defendant maintains that the Commission can compel evidence only through the issuance of a subpoena which is subject to judicial scrutiny. In response, the Commission all but concedes these facts. However, it contends that the sufficiency of its investigation is not subject to judicial scrutiny once it is established that some type of investigation has been conducted. Since the defendant admits responding to the written interrogatories, there is no question that an investigation occurred.

The framework within which the Commission has been operating, however, would appear to belie the Commission's position. In September, 1972, the EEOC sent to all of its Regional and District Directors a draft of compliance procedures for implementation. The Manual on Compliance Procedures sets forth "a step-by-step description of the processing of a charge from the time a complainant first contacts EEOC to the end of the process when the General Counsel is given the case . . .." [Introduction, p. iv.]. It directs the investigator first to identify the pertinent issues and draft questions to elicit the necessary information. The manual provides not only instructions for interviewing the charging party, but also procedures for conducting interviews with defendants. In addition, it calls for a plant tour by the investigator which is to include an inspection of the charging party's work site, "on the job" interviews with other employees, and a request for inspection of particular records. Finally, the manual prescribes an "exit interview" with all parties for the purpose of resolving unanswered questions and providing an opportunity to respond to new allegations. Nowhere in the manual is there a reference to interrogatories.

Turning to the Act itself, § 710 states that for the purpose of investigations and hearings, the EEOC will have those investigative powers granted to the NLRB under § 11 of the National Labor Relations Act. That statute provides only that testimony or documentary evidence may be compelled through the issuance of a subpoena. Within five days of service, the recipient has the right to

petition the NLRB for a revocation. If the person served refuses to obey the subpoena, the NLRB may seek enforcement through an order of the federal district court. There is no provision for the use of compulsory subpoenas by the NLRB. The EEOC's own regulations mirror this statutory scheme. Regulation 1601.15 states in pertinent part:

> (a) To effectuate the purposes of title VII, as amended, any member of the Commission shall have the authority to issue subpoenas requiring the attendance and testimony of witnesses and the production of evidence, including, but not limited to, books, records, correspondence, or documents, in the possession or under the control of the person subpenaed. . . .
>
> (b) Any person served with a subpena . . . who intends not to comply therewith, shall, within five days after the date of service . . . petition the Director of Compliance by mail . . . to revoke or modify the subpena. . . .
>
> (c) Upon the failure of any person to comply with a subpena issued under this section, the Commission may utilize the procedures of section 11(2) of the National Labor Relation Act as amended . . . to compel enforcement of the subpena. [29 C.F.R. 1601.15].

This subpoena procedure was followed by the Commission in New Orleans Public Service, Inc. v. Brown, 369 F.Supp. 702 (E.D.La.1974).

The Court is generally loathe to involve itself in the internal machinery of a government agency. Such interference has become commonplace among the judiciary in all phases of American life. However, the investigative methods undertaken in the instant case appear to violate the framework and purpose of the Act. There is nothing in the EEOC manual or its own regulations which permits the use of compulsory interrogatories. Ordinarily, this fact alone would not be significant. However, the Act explicitly equates the Commission's power with that of the NLRB whose only means of obtaining evidence is through subpoena. Moreover, the emphasis of the 1972 amendments is to secure voluntary compliance through conciliation. The compliance manual reflects this emphasis in setting forth detailed investigative procedures. The Act and the manual are designed to secure maximum interaction between the Commission and the alleged violator. It is only in this manner that the parties can hope to conciliate and avoid lengthy litigation. Interrogatories, on the other hand, only minimize communication and force the parties into the role of adversaries.

In support of its position of non-reviewability, the EEOC relies upon the Court's prior ruling and Equal Employment Opportunity Commission v. E. I. du Pont de Nemours & Co., *supra*. In its opinion of October 1, 1973, this Court never addressed itself to the question of whether the Commission's actions were subject to judicial review. The only issue before the Court was whether the Commission's complaint complied with Rule 8(a)(1) of the Federal Rules of Civil Procedure. As for the *du Pont* decision, the district court held only that it could not review the factual basis for the EEOC's determination of reasonable cause. It was careful to distinguish that situation from a review of the Commission's procedures:

> It is one thing for courts to insist upon procedural compliance with the Act and quite another to test the factual basis for Commission action. [7 FEP Cases at 773].

This Court is not reviewing the EEOC's determination that Western Electric has discriminated in its employment practices. If the Court were to adopt such a rule, there would be no need for an Equal Employment Opportunity Commission. What the Court is examining is the procedures by which the Commission reached its conclusion. It finds that the Commission violated

the Act in employing compulsory investigatory subpoenas.[3] To allow this procedure to continue would be to encourage the Commission to exercise additional power which might infringe upon the rights of defendants.

IV.

Western Electric's final argument in support of summary judgment is that the EEOC failed to comply with its own Regulation 1601.23 by not sending notice to defendant that suit would be filed unless defendant requested that conciliation be resumed. The Commission concedes that it did not give the required notice but argues that Western Electric suffered no prejudice from its failure to do so. It points to the depositions of defendant's representatives which reveal an initial decision to reject conciliation.[4] EEOC argues that this decision would have remained unchanged despite a "last chance" to reconsider.[5]

3. This Court is not the first to review the sufficiency of an EEOC investigation. In Equal Employment Opportunity Commission v. Hickey-Mitchell Co., 7 EPD ¶ 9400 (E. D.Mo.1974), the district court concluded that the Commission "made a sufficient effort to investigate the discrimination charge filed . . . ." It is noteworthy that the Commission in that case personally interviewed defendant's personnel director, examined the personnel file of the charging party, interviewed the aggrieved employee's supervisor, discussed promotion policies and racial make-up with the personnel director, and conducted a "walk through" visual inspection of defendant's premises. None of this activity was conducted in the present case.

4. Deposition of Elma A. Hoffman, Manager of Washington Installation area:

Q. Now, is it your responsibility to respond to that letter and make a decision as to whether or not you want to accept or reject the invitation?

A. It was my responsibility.

Q. Did you decide at any time not to respond to that letter and reject the Commission's invitation to conciliate?

A. Yes. We decided not to respond . . .

(p. 8, lines 6–12).

* * * *

Q. When was that decision made?

A. Shortly after receiving this letter. Somewhere within the seven days after we received it.

(p. 9, lines 15–17).

Deposition of W. A. Hulmes, Jr., Department Chief Personnel:

Q. . . . [Y]ou made a notation that the decision was made on the 9th to reject the conciliation?

A. Yes.

(p. 9, lines 17–19).

A. . . . I reviewed with [Hoffman] the case from the beginning. We went over and took another look at the determination of the case. I gave him my feelings as to the merits or non-merits of conciliation and made a recommendation that we not conciliate.

Q. What was the basis behind your recommendation to Mr. Hoffman not to conciliate the case?

A. Our action was just and correct and I didn't feel that we should conciliate.

Q. What was Mr. Hoffman's response to your recommendation?

A. He agreed with it. He agreed that we should not . . . .

(p. 10, lines 11–21).

5. Hoffman deposition:

Q. From the point in time of your receipt of the second letter . . ., you say you were foreclosed from conciliations from that point in time until when the lawsuit was filed? Were there any new facts that came to your attention that would have changed your decision to conciliate? The lawsuit was filed in May of '73, so, this would have been from February 22, or thereabouts until May of '73?

A. There were no new facts in the case itself—the Gaines case.

Q. So, nothing came to your attention that would have caused you to change your decision to reject conciliations?

A. There were no new facts in the case. That's correct.

(p. 19, lines 5–18).

Hulmes deposition:

Q. So, the facts upon which you based your decision and recommendation not to conciliate remained unchanged from the 9th of February until at least the day the law suit was filed?

A. That's correct.

(p. 11, lines 18–21; p. 12, line 1).

Upon *cross-examination, the following* was elicited:

Hoffman deposition:

Q. When you got the first letter from the E.E.O.C. about conciliation . . . and it said a period of seven days to notify the Commission, what was your understanding of what would happen if you didn't respond?

A. I really didn't know what would happen if I didn't respond. Not being familiar —this is the first case we have had such as

Regulation 1601.23, Title 29, provides in pertinent part:

> Should a respondent fail or refuse to confer with the Commission or its representative, or fail or refuse to make a good faith effort to resolve any dispute, the Commission may terminate its efforts to conciliate the dispute. In such event, the respondent shall be notified promptly, in writing, that such efforts have been unsuccessful and will not be resumed except upon the respondent's written request within the time specified in such notice. [29 C.F.R. § 1601.23].

This regulation is another example of the emphasis on the importance of conciliation in the statutory scheme of Title VII. The thrust of the Act is that the Commission has a duty to achieve voluntary compliance from the defendant through "informal methods of conference, conciliation, and persuasion." § 706(b). In recognition of that duty, the Commission has promulgated regulations such as 1601.23 to insure that effective efforts at conciliation are made prior to the institution of a civil action.

More importantly, Regulation 1601.23 confers an important procedural right upon a defendant in a discrimination case. As Judge Miller stated in Equal Employment Opportunity Commission v. Firestone Tire & Rubber Co., 366 F. Supp. 273, 276 (D.Md.1973):

> The regulation . . . grants an important procedural benefit to the respondent, i. e., the right to be notified that the EEOC deems its efforts to conciliate as unsuccessful and terminated unless requested to be resumed by respondent within a specified time.

*Accord:* Equal Employment Opportunity Commission v. Hickey-Mitchell Co., 7 EPD ¶ 9400 (E.D.Mo.1974). This notice allows the defendant one last chance to alter its position and conciliate before facing litigation. Equal Employment Opportunity Commission v. United States Pipe & Foundry Co., 375 F.Supp. 237 (N.D.Ala.1974); Equal Employment Opportunity Commission v. Louisville & Nashville Railroad Co., 368 F.Supp. 633, 638 (C.D.Ala.1974). Failure of the Commission to give the required notice necessitates a dismissal of the subsequent civil action brought by the EEOC. Equal Employment Opportunity Commission v. United States Pipe & Foundry Co., *supra*, 375 F.Supp. 237; Equal Employment Opportunity Commission v. Louisville & Nashville Railroad Co., *supra*; Equal Employment Opportunity Commission v. Firestone Tire & Rubber Co., *supra*, 366 F.Supp. at 278.

The Fourth Circuit has stated that "an agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its actions cannot stand and courts will strike it down." United States v. Heffner, 420 F.2d 809, 811 (4th Cir. 1969). Where a regulation promulgated by an administrative agency is intended to confer important procedural rights, that regulation must be strictly observed. American Farm

this. So, I didn't know what to expect. I expected that we would probably get some follow up on it.

Hulmes deposition:

Q. Mr. Hulmes, is this case the first situation where you have been asked to go in an E.E.O.C. conciliation?

A. It is the first incidence. The first case.

Q. When you recommended to Mr. Hoffman that you would not make a response to the initial request to conciliate within seven days, what was your understanding of what was going to happen when the E.E.O.C. didn't hear from you?

A. I didn't know what was going to happen. I thought may be we would hear from them. A follow-up letter. But, I didn't know what was going to happen.

Q. At that point, had you made an absolute determination that you couldn't offer any amount of money in conciliation or was your mind open that you would offer some amount at a later time?

A. I don't know what state my mind was in. The thought hadn't crossed my mind. If it came up later, I may have considered it.

(p. 34, lines 13–21; p. 35, lines 1–8).

Lines v. Black Ball Freight Service, 397 U.S. 532, 538–539, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); Vitarelli v. Seaton, 359 U.S. 535, 539, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Equal Employment Opportunity Commission v. Westvaco Corp., 372 F.Supp. 985, 993 (D.Md. 1974); Equal Employment Opportunity Commission v. Firestone Tire & Rubber Co., *supra*, 366 F.Supp. at 277. Regulation 1601.23 confers an important procedural right, and the EEOC's blatant violation of the plain language of its own regulations dictates a dismissal of the present action. Equal Employment Opportunity Commission v. Westvaco Corp., *supra*; Equal Employment Opportunity Commission v. Firestone Tire & Rubber Co., *supra*. There is nothing in the regulations that suggests that the EEOC, in its discretion, may elect not to apply them.

The Commission strenuously argues that no prejudice inhered to Western Electric's detriment. It points out that the above-cited decisions are inapposite to the factual situation before this Court in that prejudice was indeed found. In neither *Firestone* nor *Louisville & Nashville Railroad* was it held that prejudice was a prerequisite to enforcing the notice requirement of Regulation 1601.23. In *Hickey-Mitchell* and *United States Pipe*, the courts found the defendants almost completely unwilling to conciliate. Yet, it was held that the benefit was significant enough to require the EEOC's compliance. No distinction is drawn between the non-cooperative defendant and one which is anxious to conciliate. Equal Employment Opportunity Commission v. United States Pipe & Foundry Co., *supra*, 375 F.Supp. 237.

This Court cannot accept the Commission's assertion that the defendant was not prejudiced by the lack of notice. As was observed by the district judge in *United States Pipe*:

> Had there been compliance with both the statute and the regulations, this dispute might not have reached this court. Both the statute and the Commission regulations provide avenues to escape litigation. If defendants do not have the advantage of the option to take these avenues, then this court believes they have been prejudiced. Where an agency confers a benefit by its regulations to a party in proceedings before it, it should not be permitted capriciously to deprive a party of that benefit. [375 F.Supp. at 247].

As a last resort, the Commission insists that the February 22nd letter sent pursuant to Regulation 1601.25 is equivalent to the notice required by Regulation 1601.23. The letter is not a substitute for notice under 1601.23 since it does not advise the defendant that it may reopen conciliation within the time specified. Compliance with 1601.25 is not compliance with 1601.23. Equal Employment Opportunity Commission v. United States Pipe & Foundry Co., *supra*; Equal Employment Opportunity Commission v. Louisville & Nashville Railroad Co., *supra*, 368 F.Supp. at 638–639.

In its motion for partial summary judgment, Western Electric alleges that: (1) the EEOC cannot expand the individual charge to encompass widespread race and sex discrimination since no pattern-or-practice charge was filed with the Commission pursuant to Section 707(e) of the Act; (2) the Commission is precluded from raising allegations of sex discrimination which are not "like or reasonably related" to the charge filed with the Commission; and (3) the EEOC failed to afford the defendant an opportunity to respond to the allegations of discrimination as required under Regulation 1601.14. Defendant's first two contentions are related and, for that reason, will be treated together.

## V.

Western Electric argues that the EEOC is restricted to investigating and acting upon only the individual charge filed by Mr. Gaines. If the Commission desires to attack widespread discrimination, it must file and process a

separate "pattern-or-practice" charge under Section 707(e) of the Act.[6] In substance, defendant is claiming that the "like or related" test employed prior to 1972 in determining the permissible scope of an EEOC suit is no longer valid. The Commission, on the other hand, finds nothing in the legislative history to indicate that Congress intended to limit its power under Section 706 by enacting Section 707(e).

There is a plethora of pre-1972 decisions discussing the proper scope of a complaint filed under Title VII. In essence, they all rely upon and apply the test first established in King v. Georgia Power Co., 295 F.Supp. 943, 947 (N.D. Ga.1968):

> The correct rule is that the complaint in the civil action is confined to those issues the original complaint has standing to raise, but may properly encompass any such discrimination like or reasonably related to the allegations of the charge and growing out of such allegations during the pendency of the case before the Commission.

This rule was rephrased in Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970) as "the 'scope' of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination."

Few guidelines exist to resolve this particular issue. Those courts which have considered the permissible scope of post-1972 EEOC suits have generally assumed that the "like or related" test applied.[7] Only Chief Judge Turk has explicitly stated that:

> Although the . . . [rule was] formulated in cases brought by private parties, the court is of the opinion that [it is] equally applicable to a case such as that at bar brought by the EEOC. [Equal Employment Opportunity Commission v. General Electric Co., 376 F.Supp. 757, 761 (W.D.Va.1974)].

*See* Equal Employment Opportunity Commission v. Christiansburg Garment Co., 376 F.Supp. 1067 (W.D.Va.1974).

This Court sees no reason to depart from this approach. The purpose of the 1972 amendments was to strengthen the Commission's power in eliminating employment discrimination. It is difficult to believe that Congress intended to limit that power to the specific act of discrimination alleged in the individual charge while at the same time granting the Commission the right to file a civil action. Although Congress provided for instituting a pattern-or-practice charge under Section 707(e), it would appear that the enactment of this section was designed only to reaffirm the preeminence of the EEOC in enforcing the provisions of the Act.

Defendant's second contention deserves far more serious consideration. It is argued that the Commission's allegations of unlawful employment practices against women are not "like or related" to the charge of racial discrimination filed by Gaines. Western Electric asserts that a male complainant does not have standing to raise allegations of female discrimination. The EEOC counters that to file a separate charge of sex discrimination at this time would be futile since it has already investigated this

6. Section 707(e) provides:
Subsequent to March 24, 1972, the Commission shall have authority to investigate and act on a charge of pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission. All such actions shall be conducted in accordance with the procedures set forth in section [706] of this title.

7. *See* New Orleans Public Service, Inc. v. Brown, 369 F.Supp. 702 (E.D.La.1974); Equal Employment Opportunity Commission v. Kimberly-Clark Corp., 7 FEP Cases 666 (W.D.Tenn.1974); Equal Employment Opportunity Commission v. Hickey-Mitchell Co., 372 F.Supp. 1117 (E.D.Mo.1973); Equal Employment Opportunity Commission v. New York Times Broadcasting Service, Inc., 364 F.Supp. 651 (W.D.Tenn.1973); Equal Employment Opportunity Commission v. Mobil Oil Corporation, 362 F.Supp. 786 (W.D. Mo.1973); Latino v. Rainbo Bakers, Inc., 358 F.Supp. 870 (D.Col.1973).

area. Moreover, it maintains that the concept of standing is irrelevant where a government agency files suit in the public interest.

The court in *Georgia Power* carefully defined the limits of the "like or related" standard. The rule restricts an EEOC action to "that range of issues that would have been the subject matter of the conciliation efforts between EEOC and employer." King v. Georgia Power Co., *supra,* 295 F.Supp. at 947. If the suit were not so limited, the emphasis upon conciliation and voluntary compliance would be circumvented. In fact, the notice and conciliation requirements of Section 706 would serve no useful function. Equal Employment Opportunity Commission v. General Electric Co., *supra,* 376 F.Supp. 757. The expansion of a particular charge is limited to those issues that a particular complainant has standing to raise. Equal Employment Opportunity Commission v. New York Times Broadcasting Service, Inc., 364 F.Supp. 651, 653 (W.D.Tenn.1973); King v. Georgia Power Co., *supra.* The EEOC is not free to manipulate the scope of the case beyond these bounds. New Orleans Public Service, Inc., v. Brown, 369 F.Supp. 702 (E.D.La.1974); King v. Georgia Power Co., *supra.*

In the instant case, the allegations of sex discrimination against females grew out of a charge of racial discrimination filed by a black man.[8] While EEOC may have had standing to raise a count of sex discrimination on its own behalf,[9] the scope of the judicial complaint may not be broadened to include new counts of discrimination which were not subject to the investigation and conciliation requirements of the statute. Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970).

Recent decisions in the area of employment discrimination support this conclusion. In Equal Employment Opportunity Commission v. General Electric Co., *supra,* summary judgment was granted in defendant's favor dismissing an allegation of sex discrimination where the original charges were filed by two black males who alleged racial discrimination. Finding that there was no possible relationship between the charging parties and allegations of sex discrimination, the court said:

> [S]ince a suit under Title VII brought by the EEOC must be based on a charge, the issues raised in the suit must be limited to claims which might have been raised by the charging party. To adopt the EEOC's position without such a limitation would be to allow suit on grounds unrelated to the charge filed with it and which could not reasonably have been expected to grow out of the charge of discrimination. [376 F.Supp. at 761].

A similar result was reached in Equal Employment Opportunity Commission v. Hickey-Mitchell Co., 372 F.Supp. 1117 (E.D.Mo.1973) where a charge of racial discrimination was brought by a black female. The court dismissed the Commission's claims of sex discrimination observing that sex discrimination was not mentioned in the charge, and that such allegations were not reasonably within the scope of an investigation of the charge. In Equal Employment Opportunity Commission v. New York Times Broadcasting Service, Inc., *supra,* the court dismissed the allegations of racial discrimination in an EEOC complaint where the charge had been filed by a white female claiming sex discrimination. It noted that no charge of racial discrimination had been filed against the defendant by a black person. Apply-

8. In his Charge of Discrimination, Gaines alleged:

> On April 26, 1972, I was terminated for insubordination because I refused to sweep an entire floor. In June of 1972, a white man, also an installer, refused to do a simple cable job. He was also accused of insubordination, but received a 10-day suspension. I feel that this difference in treatment was because of my *race.* [Emphasis supplied].

9. 42 U.S.C. § 2000e–5(b) expressly authorizes the Commission to file charges on its own behalf covering all manner of unlawful employment practices.

ing the rule in *Georgia Power,* the district judge stated:

> [The] charge is clear, concise and unambiguous; it applies *only* to alleged sex discrimination. If she, rather than EEOC were bringing this suit, this white female could scarcely be held to be a proper representative of black employees generally. We hold that EEOC is bound to base a complaint under Title VII on an actual charge that is like and reasonably related to what is alleged in court against any employer or other defendant. [364 F.Supp. at 654].

The Court is cognizant that several decisions have held to the contrary. *See* Latino v. Rainbo Bakers, Inc., 358 F. Supp. 870 (D.Colo.1973); Allstate Insurance Co. v. Equal Employment Opportunity Commission, 4 FEP Cases 645 (S.D.N.Y.1972). In *Latino,* the plaintiff was a female who filed charges alleging discrimination on the basis of national origin. An EEOC investigation concluded that she had been the victim of sex discrimination, and the court permitted such allegations. However, that case is easily distinguishable in that the investigation and conciliation procedures followed by EEOC in the *Latino* case were entirely in compliance with the requirements of the statute. As for *Allstate,* the court without explanation simply permitted allegations of religious and racial discrimination even though the aggrieved person complained only of religious bias. To the extent that the *Allstate* decision stands for the principle that all the counts of the judicial complaint need not comply with the investigation and conciliation procedures outlined by Title VII, this Court respectfully declines to follow it.

The Court concludes that the issues raised in the suit brought by the EEOC must be limited to claims of racial discrimination. Consequently, it finds that even if there were no basis for granting summary judgment, the allegations of sex discrimination would not be properly before the Court.

VI.

Finally, Western Electric argues that it was denied an opportunity to submit a statement with respect to the Commission's allegations of class-wide race and sex discrimination, in direct violation of Regulation 1601.14. The interrogatories propounded to defendant pertained only to the individual charge of racial discrimination filed by Gaines. Defendant contends that it was only after the EEOC was furnished the requested information that allegations of class discrimination arose. In turn, the Commission insists that it complied fully with the regulation and that defendant availed itself of the opportunity to present evidence. The class issues in the complaint arose from the very information provided by defendant.

On November 3, 1972, the Commission sent defendant a copy of the charge and a series of 29 interrogatories, the last of which read:

> 29. The respondent may submit a statement of his position and any other information, documents or records which you deem relevant to a proper determination of the charge.

This interrogatory was ostensibly designed to fulfill the requirements of Regulation 1601.14, which provides in pertinent part:

> As part of each investigation, the person making the charge on behalf of the aggrieved person, the aggrieved person and *the respondent shall each be offered an opportunity to submit a statement of its position or evidence with respect to the allegations.* [Emphasis supplied].

Western Electric answered all of the interrogatories including No. 29. There, it set forth a narrative statement of its position in response to the charge and attached a copy of its Affirmative Action Program.

From the standpoint of due process, Western Electric should have been afforded the opportunity to respond to the allegations of sex discrimination of which it had no prior notice.

Regulation 1601.14 confers upon a defendant an important procedural benefit similar to 1601.23. It gives a defendant an opportunity to answer any allegations prior to the Commission's determination of reasonable cause. (For once reasonable cause has been found, such a determination is irreversible). This is particularly important, here, where interrogatories constituted the primary contact between the parties. While the Commission correctly states that defendant is entitled to a trial *de novo* on the issues, Regulation 1601.14, as well as the entire statutory scheme of Title VII, is designed to avoid that timely and expensive consequence.

To adopt the Commission's position would be to put the proverbial cart before the horse. The allegations of sex discrimination arose *after* the defendant provided the information requested. Obviously, then, it did not have a chance to present evidence to refute the claim of sex discrimination. The Commission would force a defendant to guess or anticipate what charges it will bring.

It is repetitious, but it bears repeating again, that the tenor of the Act is voluntary compliance. By denying the defendant the chance to respond, the Commission closes the door on communication and locks the parties into irreconcilable positions. Only through interaction can all the facts and issues be aired and a possible settlement be reached.

As a final comment, the Court is disturbed by the Commission's attitude that most of the issues raised herein are purely technical objections. It holds that its well-meaning goal of eliminating employment discrimination justifies the breach of any procedural rules or regulations. This Court cannot agree. The elimination of crime is also a desirable goal considering the human waste it visits. Yet, a court could not dismiss the failure to advise an accused of his constitutional rights as a mere technicality. So, too, in this case where serious charges of discrimination have been made, the defendant cannot be stripped of all rights.

The events of the past year, indeed the past month, have taught us the meaning of that phrase "ours is a government of laws not of men." The Government expects its citizens to obey the law, and when they do not, it asks for an accounting. How strange it is that when a government official or agency breaches a statute or regulation, it is casually dismissed as a mere technicality. A government which does not respect the law certainly cannot expect its citizens to do so. No one is above the law including the EEOC.

For the reasons stated above, it is this 15th day of August, 1974, ordered:

1. That the defendant's Motion for Summary Judgment be, and the same hereby is, granted as to claims III and IV;

2. That the defendant's Motion for Summary Judgment is, in all other respects, denied;

3. That the defendant's Motion for Partial Summary Judgment be, and the same hereby is, granted as to claims V and VI except as therein stated.