EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,

v.

RAYMOND METAL PRODUCTS COMPANY, a subsidiary of Raymond International, Inc., and the United Steelworkers of America and its Local 6414, Appellees.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellee,

v.

RAYMOND METAL PRODUCTS COMPANY, a subsidiary of Raymond International Inc., Appellant.

Nos. 75–1007, 75–1008.

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1975.

Decided Jan. 26, 1976.

Lutz Alexander Prager, Atty., Washington, D. C. (William A. Carey, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, and Beatrice Rosenberg and Charles L. Reischel, Attys., E. E. O. C., Washington, D. C., on brief), for E. E. O. C.

Peter F. Healey, Washington, D. C. (William H. Willcox, Bernard J. Casey, and Gall, Lane & Powell, Washington, D.

C., on brief), for Raymond Metal Products Co.

Before CRAVEN, BUTZNER, and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

This appeal and cross appeal arise from the district court's grant of summary judgment, dismissing on procedural grounds a suit by the Equal Employment Opportunity Commission against Raymond Metal Products Co., the United Steel Workers of America, and its Local 6414 for violations of Title VII of the Civil Rights Act of 1964.[1] In Parts I and II, we reverse the district court's ruling that the commission improperly delegated its authority to subordinates and failed to comply with its own regulations concerning notification that conciliation efforts had failed. In Part III, we deal with the company's cross appeal and affirm the district court's rulings that the complaint was not overly broad and the suit was timely filed.

I

### Validity of 29 C.F.R. § 1601.19b(d)

After an aggrieved person or a member of the commission has filed a charge against an employer or a labor organization alleging an unfair employment practice, Title VII requires the commission to complete a four-step procedure before commencing judicial action. These steps are service of a notice of the charge, investigation, determination of whether there is reasonable cause to believe the charge is true, and endeavors to eliminate the alleged unlawful practice through conference, conciliation, and persuasion.[2] The commission can institute suit only if it has been unable to secure an acceptable conciliation agreement.[3]

Pursuant to statutory authority to make "suitable procedural regulations to

1. *EEOC v. Raymond Metal Products Co.*, 385 F.Supp. 907 (D.Md.1974). The commission has not appealed the district court's dismissal of the suit against the union.

2. 42 U.S.C. § 2000e–5(b).

3. 42 U.S.C. § 2000e–5(f)(1) provides in part:

"If . . . the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent . . . ."

carry out the provisions" of Title VII,[4] the commission issued a regulation, 29 C.F.R. § 1601.19b(d), delegating to district directors authority to dismiss charges, issue determinations as to reasonable cause, and make and approve conciliation agreements. A district director's determination of reasonable cause is final and cannot be appealed to the commission, although he may reconsider his finding at any time.[5] His authority to determine reasonable cause is circumscribed by the commission's Interpretive Manual to situations where commission precedents exist.[6]

Raymond Metal moved for summary judgment on the grounds that the regulation is substantive, not procedural as required by the statute; that it unlawfully delegates authority to the district directors to determine reasonable cause and oversee conciliation efforts; and that, in any event, the statute does not sanction the commission's delegation of authority to make final, unreviewable decisions.

The district court considered the regulation to be procedural and ruled that the commission could delegate to the district directors authority to determine whether probable cause exists and to make and approve conciliation agreements. It found flaws in the regulation, however, because the determination of probable cause was not reviewable by

the commission and because the district directors' implicit power to disapprove a conciliation agreement gave them "de facto power" to commence civil actions.

### A. The regulation is procedural

The line between substance and procedure is sometimes hard to draw. Often it depends on the particular situation for which the distinction is made. See *Guaranty Trust Co. v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). In this instance, the distinction must be viewed in the light of Congress's refusal to grant the commission adjudicative powers, which would necessarily include the authority to delineate the rights and obligations of the parties.[7] We think that by restricting the commission to issuance of procedural rules, Congress intended to limit it to making rules for conducting its business, and to deny it the power to make substantive rules that create rights and obligations.

The regulation under attack does not define the rights and duties of the parties. Instead, it prescribes the methods by which the agency acts. The administrative actions of the commission do not in themselves enforce any rights or impose any obligations. This can be done only by a voluntary conciliation agreement or by a court after a trial de novo.[8] Therefore, we agree with the dis-

---

**4.** 42 U.S.C. § 2000e–12(a).

**5.** 29 C.F.R. § 1601.19b(d) provides that:

"The District Directors, or other designated officers, on behalf of the Commissioner, may, upon completion of an investigation, dismiss charges, make and issue determinations as to reasonable cause, and serve a copy thereof upon the parties, and make and approve conciliation agreements in those cases where such authority has been delegated to them by the Commission. The determination is final when issued; therefore, requests for reconsideration will not be granted. The District Directors, or other designated officers, may, however, on their own motion, reconsider their determination at any time . . . ."

**6.** Commission precedents are described in § 501(a) of the Manual as:

1. Commission decisions cited in the Manual;

2. Commission decisions published in commercial reporting services; and
3. Commission guidelines published in the Code of Federal Regulations.

**7.** Congress considered, but rejected, a proposal to give the commission power to adjudicate claims of employment discrimination. See 1964 U.S.Code Cong. and Admin.News 2411 (Additional Majority Views of Hon. Robert W. Kastenmeir, House Report No. 914 on H.R. 7152).

**8.** 42 U.S.C. § 2000e–5(b), (f) and (g); *Robinson v. Lorillard Corp.*, 444 F.2d 791, 800 (4th Cir. 1971).

Nothing said or done in a conciliation conference is admissible in a subsequent civil action without consent. 42 U.S.C. § 2000e–5(b). Although the commission's investigative reports and findings have been admitted as evidence in private litigation under the Business Records Act, 28 U.S.C. § 1732, they are not

trict court that 29 C.F.R. § 1601.19b(d) conforms to the statutory requirement that it be procedural.

### B. *Delegation of intermediate administrative procedures*

▉ We also conclude that the regulation is not invalidated either by the absence of a provision for administrative review of the district director's determination that reasonable cause exists or by the director's implied power to disapprove a conciliation proposal. The Supreme Court has adopted a pragmatic test to determine whether Congress intended to authorize delegation of agency powers. In *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947), the Court considered whether the Emergency Price Control Act permitted the administrator to delegate his authority to issue subpoenas. Relying on the statutory authority for the administrator to make regulations to carry out the purpose of the Act, the Court approved the delegation. It said, "Such a rule-making power may itself be an adequate source of authority to delegate a particular function, unless by express provision of the Act or by implication it has been withheld." 331 U.S. at 121, 67 S.Ct. at 1134. An important factor suggesting to the Court that Congress did not intend to prohibit such delegation was the complexity of administering the statute.

Except for the limitation to procedural regulations, the present statute is virtually identical to the one considered in *Fleming*. In this case, as in *Fleming*, there is no express denial of the power to delegate. Here, too, the magnitude of the task militates strongly against a decision that Congress intended not to allow the commission to delegate these functions. In fiscal year 1974, a total of 9,035 reasonable cause determinations were issued and 5,198 were denied. Were the commission forced to decide or review each of these determinations as

they were made, it would be hard pressed for time to make policy, consider charges that present novel and difficult issues, and decide which cases to litigate. Nor could it thoroughly treat the reasonable cause determinations themselves. These calculations do not take into account the failure of endeavors to conciliate that also would have to be reviewed. Like the Court in *Fleming*, we are unwilling, without evidence of congressional intent to the contrary, to read the rule-making regulation so narrowly as to render the agency ineffective. *Cf. NLRB v. Duval Jewelry Co.*, 357 U.S. 1, 7, 78 S.Ct. 1024, 2 L.Ed.2d 1097 (1958); *see generally* 1 K. Davis, Administrative Law Treatise § 9.01–.07 (1958) (1970 Supp.)

Mr. Justice Jackson, concurring in *Fleming*, observed that the administrator's authority to delegate was consistent with congressional policy because adequate judicial safeguards existed. 331 U.S. at 123, 67 S.ct. 1129. Title VII provides similar protection. As we have previously noted, the commission has no adjudicative powers. The administrative procedure culminates with a decision to either commence or forego suit. An aggrieved person can bring a civil action even if the administrative investigation discloses that his charge lacks merit. Conversely, a respondent who has rejected conciliation can defend in a trial *de novo* a complaint that he has committed an unfair labor practice. Because the Act assures all parties access to a full judicial hearing, the absence of a provision in the regulation for the commission's review of innumerable intermediate administrative proceedings is consistent with the overall statutory design for securing equal employment opportunities.

### C. *Delegation of the power to sue*

The 1972 Amendments to the Act empowered the commission to bring a civil action to remedy private unlawful em-

---

binding on the court and are entitled to no more weight than any other testimony. *Smith* *v. Universal Services, Inc.*, 454 F.2d 154 (5th Cir. 1972).

ployment practices.[9] The district court concluded that this authority could not be delegated and that the regulation was invalid because the absence of review clothed the district directors with de facto power to institute suit.[10] It therefore enjoined the commission from bringing any civil actions until the regulations were revised.[11] The court stayed its order on receipt of a motion supported by the affidavit of the general counsel that the commission has not delegated its authority to file suit and that it exercises its power to sue only after reviewing the file.[12] Apart from this affidavit outlining the general policy of the commission, the administrative record discloses that the commission itself authorized this action against Raymond Metal.

We need not decide whether the commission can delegate its authority to file a civil action, because it is clear that it has not done so. It is also apparent that a civil action is not automatically triggered by the district director's decision that an acceptable conciliation agreement cannot be obtained. Since the commission has not delegated its statutory duty to decide whether to institute suit, the absence of a regulation on this subject is of no consequence.

We hold, therefore, that § 1601.19b(d) of the commission's regulations is valid.

## II

### Compliance with 29 C.F.R. § 1601.23

The district court also granted summary judgment on the ground that the commission failed to comply with another regulation, 29 C.F.R. § 1601.23. This provides that when conciliation efforts have been unsuccessful, the commission should notify the employer that they have been terminated and will not be resumed unless the commission receives a written request within the time specified in the notice.[13] The commission's institution of a civil action without giving notice deviates materially from the regulation and warrants dismissal of the suit. *EEOC v. Hickey-Mitchell Co.,* 507 F.2d 944 (8th Cir. 1974); *EEOC v. Western Electric Co.,* 382 F.Supp. 787 (D.Md. 1974).[14] Here, in contrast to *Hickey-Mitchell* and *Western Electric*, the commission notified Raymond Metal that it was terminating conciliation, but it

---

9. *See* n. 3 *supra.*

As originally enacted in 1964, Title VII did not empower the commission to institute a civil action. *See* § 706 of the Civil Rights Act of 1964, 78 Stat. 259 (1964).

10. At least one district court has rejected this conclusion. *See EEOC v. MFC Services (AAL),* Civ. Action No. J 74–58(R), (S.D.Miss., March 20, 1975).

11. *See EEOC v. Raymond Metal Products Co.,* 385 F.Supp. 907, 926 (D.Md.1974).

12. The affidavit stated in part that:

"The Commission has never delegated the authority under the statute to file suits to anyone . . . . It is the formal policy of the Commission that no suit may be filed in any case without Commission approval.

"After a failure of conciliation, . . . a case is reviewed at several levels of increasing responsibility before it is even considered by the Commission. . . . [T]he case is [then] placed on the Commission agenda for a vote at its next meeting. Before the meeting, the recommendation, with the entire case file, including the reasonable cause determination and documentation of failure of conciliation, is forwarded to the Commission for review.

"On each occasion where an authorization for suit has been sought, the Commission has reviewed the entire administrative file and on a number of occasions has refused to authorize suit until additional information has been furnished with respect to the scope of the investigation, the validity of the cause determination and the sufficiency of the efforts at the conciliation. . . ."

A more detailed exposition of these procedures may be found in EEOC Compliance Manual, Section 82, Litigation Referral, at 1401 (CCH ed.).

13. 29 C.F.R. § 1601.23 Refusal of respondent to cooperate.

"Should a respondent fail or refuse to confer with the Commission or its representative, or fail or refuse to make a good faith effort to resolve any dispute, the Commission may terminate its efforts to conciliate the dispute. In such event, the respondent shall be notified promptly, in writing, that such efforts have been unsuccessful and will not be resumed except upon the respondent's written request within the time specified in such notice."

14. The commission's appeal of *EEOC v. Western Electric Co.,* 382 F.Supp. 787 (D.Md.1974), was dismissed by stipulation.

failed to state that it would resume its efforts on receipt of a written request within a stipulated time.[15] Approximately three months after the notice, the commission filed this civil action.

■ The commission's statutory duty to attempt conciliation is among its most essential functions. It is, therefore, important that it follow its own regulations, especially when it intends to cease administrative efforts and resort to the courts. But not every relaxation of an agency's rules merits dismissal. The imposition of this extreme sanction generally depends on whether the party dealing with the agency was prejudiced. *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 537–39, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); *McCourt v. Hampton*, 514 F.2d 1365, 1370 (4th Cir. 1975); *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1360–61 (6th Cir. 1975).

■ Raymond Metal's initial refusal to enter into conciliation discussions does not establish lack of prejudice. The regulation expressly allows even a recalcitrant respondent one last chance to settle the dispute. *See EEOC v. Hickey-Mitchell Co.*, 507 F.2d 944, 948 (8th Cir. 1974). We believe, however, that Raymond Metal's actions after receiving the commission's letter show that it was not prejudiced by the commission's failure to state that an opportunity to resume conciliation would be available for a limited time.

The initial charge, which Raymond Metal has consistently denied, dealt with discrimination on account of national origin. During the course of the investigation, the district director determined that there was reasonable cause to believe that Raymond Metal had discriminated on the basis of race and sex, and

he notified the company of his findings. In response, it denied the factual basis of these allegations and asserted that as a matter of law the original charge could not be expanded. The company stated in the district court that it did not want to engage in conciliation discussions,[16] and it has not wavered from this position.

Finally, while the commission did not fully comply with § 1601.23, its notice acknowledged the company's refusal to conciliate and advised that suit might follow. Its letter did not say that the commission would no longer negotiate. If Raymond Metal had changed its mind about conciliation or if the commission had been mistaken about the firmness of Raymond Metal's stand, the company could have contacted the commission any time before suit was filed. In contrast to the procedure followed here, no letter was sent in *Hickey-Mitchell* or *Western Electric, supra*, so those employers did not know that the commission was planning to move from an administrative to a judicial forum.

■ Because the commission's letter fairly warned Raymond Metal that suit might be brought and because the company's position after receipt of the notice indicated that it had no interest in conciliation, it is apparent that an offer to attempt conciliation at the option of the company would have been futile. The district court made no finding that Raymond Metal had been prejudiced, and the facts affirmatively disclose that no such finding could be made. We hold, therefore, that the case should not have been dismissed because the commission did not comply in every respect with 29 C.F.R. § 1601.23. *Accord, EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1360–61 (6th Cir. 1975); *cf. EEOC v. Louisville &*

---

**15.** The Commission's letter to Raymond Metal read as follows:

"This is to inform you that we have received your letter of November 8, 1972, in which you stated that Raymond Metal Products Company does not wish to enter into conciliation discussions in an attempt to settle the above matter.

"Please be advised that the case has been forwarded in accordance with Commission

procedures and the Charging Party has been advised of his right to request a Notice of Right to Sue in Federal District Court."

**16.** A lawyer for the company stated that:

"Now, in this case, Raymond Metal, concededly, did not want to engage in conciliation discussions, particularly discussions with respect to the race and sex allegations of the Complaint."

*Nashville R.R.,* 505 F.2d 610 (5th Cir. 1974).

■ We cannot conclude this part of the opinion without an additional note. Section 2000e–5(f)(1) allows a district court to stay further proceedings for not more than 60 days to permit further efforts to obtain voluntary compliance. One of the reasons Raymond Metal declined to engage in conciliation discussions before suit was its bona fide belief that the commission had unlawfully expanded the charge. We affirm in Part III the district court's decision that the enlargement was proper. In view of this, the parties may wish to explore on remand the possibilities of reaching an acceptable agreement. If they do, Raymond Metal's willingness to discuss conciliation at this stage of the proceedings must not be considered in any way a reflection on the merits of its case should the negotiations fail. The Act's prohibition against prejudicial use of things done or said in a conciliation conference [17] should be construed to embrace a belated agreement to confer.

### III

### The cross appeal

■ Raymond Metal assigns two errors. First, the company contends that the district court should have granted summary judgment on the counts of the complaint alleging race and sex discrimination, because these violations were not included in the initial charge filed with the commission. This issue has been decided adversely to Raymond Metal's position by our recent opinion in *EEOC v. General Electric Co.,* 532 F.2d 359, No. 74–1974 (4th Cir. 1975), in which Judge Russell thoroughly examined the subject. Accordingly, we affirm the district court on the basis of that opinion without further discussion, other than a brief comment on the company's contention that the allegations of race and sex discrimination should have been referred to the Maryland Commission on Human Relations.

■ The Act directs the commission to defer to state agencies established to eliminate unfair employment practices.[18] The initial charge was referred to the Maryland commission, but that agency waived jurisdiction. When the federal commission later discovered reasonable cause to believe that the company engaged in race and sex discrimination, it did not refer the case again to the Maryland commission. We find no error in this procedure. One purpose of the statute is to give state agencies an opportunity to settle disputes before the federal government steps in. This purpose, however, is adequately served by the initial referral which affords the state agency an opportunity to undertake a full investigation of the company's practices. *Cf. Pacific Maritime Association v. Quinn,* 465 F.2d 108, 110 (9th Cir. 1972). Once the federal commission had conducted its own investigation, resubmission to the state agency would involve needless delay, duplication of effort, and expense. *See Latino v. Rainbo Bakers, Inc.,* 358 F.Supp. 870, 872 (D.Col. 1973).

Raymond Metal's second assignment of error concerns the district court's denial of its motion to dismiss the complaint as untimely. The district court thoroughly considered the factual and legal aspects of this issue, and we affirm for the reasons given in its opinion.[19]

The judgment of the district court is reversed in part and affirmed in part. The case is remanded for further proceedings consistent with this opinion.

No. 75–1007 reversed.

No. 75–1008 affirmed.

---

**17.** 42 U.S.C. § 2000e–5(b).

**18.** 42 U.S.C. § 2000e–5(c) and (d).

**19.** *EEOC v. Raymond Metal Products Co.,* 385 F.Supp. 907, 912–14 (D.Md.1974).