**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**RAYMOND METAL PRODUCTS COMPANY, a subsidiary of Raymond International, Inc., and the United Steelworkers of America and its Local 6414.**

**Civ. A. No. 73–320–N.**

United States District Court,
D. Maryland.
Nov. 26, 1974.

---

**910**

William A. Carey, Gen. Counsel, Charles F. Wilson, Associate Gen. Counsel, Delores Wilson, Regional Atty., Stuart I. Saltman, Associate Regional Atty., Frank J. Tuk, Supervisory Trial Atty., Theodore E. Ravas, Jr., Trial Atty., all of Philadelphia Regional Litigation Center, EEOC, Philadelphia, Pa.; George Beall, U. S. Atty., and James M. Kramon, Asst. U. S. Atty., for the District of Maryland, for plaintiff.

George H. Cohen, Jeffrey L. Gibbs of Washington, D. C., and I. Duke Avnet and Avnet & Avnet Baltimore, Md., for defendant, The United Steelworkers of America.

I. Duke Avnet and Avnet & Avnet of Baltimore, Md., and George H. Cohen Washington, D. C., for defendant Local 6414, The United Steelworkers of America.

Peter F. Healey of Washington, D. C., and John Eris Powell of Rockville, Maryland, for defendant Raymond Metal Products Co.

NORTHROP, Chief Judge.

This is an action brought by the Equal Employment Opportunity Commission [hereinafter, "EEOC" or "Commission"] pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by Public Law 92–261, 86 Stat. 103 (March 24, 1972) [hereinafter, "Civil Rights Act" or "Title VII"]. The EEOC alleges that the defendants, Raymond Metal Products Co. and The United Steelworkers of America and its Local 6414, engaged in discriminatory employment practices based on sex, race and national origin in violation of § 703(a) of the Civil Rights Act.

Each defendant has filed a motion to dismiss and/or in the alternative for summary judgment.

## MOTION OF UNITED STEEL- WORKERS OF AMERICA and its LOCAL 6414.

In addition to adopting the grounds put forth by Raymond Metal Products Co. [hereinafter, "Raymond Metal" or "the Company"] in support of their motion for summary judgment, infra, United Steelworkers of America [herein-

after, "the International" or "the Union"] raise two independent arguments. First, it is argued that this Court lacks jurisdiction over the Union in that the International was neither named in the charge, served with notice of the charge, nor served with a copy of the complaint. EEOC, on the other hand, argues that service upon Local 6414 was sufficient as service upon the International on the basis of the alleged agency relationship existing between the two entities.

■ The presence or absence of an agency relationship between the two unions is the critical factor in determining this Court's jurisdiction over the International. Moody v. Albemarle Paper Co., 271 F.Supp. 27, 29 (E.D.N.C. 1967); Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258, 267 (E.D.La. 1967). In the instant case, the labor-management agreement between Raymond Metal and the United Steelworkers of America expressly provides that the Local will act as representative of the International.[1] This Court finds that an agency relationship did exist between the International and the Local and for that reason, naming the Local in the charge and making service upon it was sufficient as process against the International. Claycraft Co. v. United Mine Workers of America, 204 F.2d 600, 603 (6th Cir. 1953).

Second, both the International and the Local argue that they are improperly before this Court in that the Union's offer to participate in conciliation discussions was rejected by EEOC. While recognizing that an attempt at conciliation is a jurisdictional prerequisite to bringing a civil action, 42 U.S.C. § 2000e–5(f)(1), EEOC maintains that the refusal of Raymond Metal to conciliate rendered futile any anticipated

1. The third paragraph of Article I of the Agreement provides:
 Accordingly, the Company and the Union, as evidence of attitude and intent, have agreed that during the life of this Agreement officials of their respective organizations shall meet on the third Friday of each sixth month from date of this Agree-

ment in the City of Baltimore, Maryland. Such officials representing the Union shall be the District Director, the International Staff Representative, the President of the local Union and the Chairman of the Grievance Committee, or one other officer of the local union . . . . [emphasis added].

settlement discussions with the Union. It is EEOC's position that any agreement with the Union which did not include the Company would not be acceptable, and therefore the determination that conciliation had failed was justified.

This Court cannot accept EEOC's arbitrary construction of the conciliation mandate of Title VII. The language of 42 U.S.C. § 2000e–5(f) (1)[2] does not permit the Commission to determine that the conciliation agreement of a particular respondent is unacceptable before conciliation discussions have ever taken place. Equal Employment Opportunity Commission v. Container Corp. of America, 352 F.Supp. 262, 265 n.10 (M.D.Fla.1972). If the parties had engaged in conciliation discourse, the Union might well have agreed to bind themselves to whatever agreement was reached between EEOC and the Company, thus eliminating the need to include the Union in this civil action. This opportunity was never afforded the Union. This Court will not sanction such a deviation from Title VII's mandate that a sincere endeavor at conciliation be pursued with each respondent named in the charge before a civil action is brought. For this reason, the Union's motion for summary judgment will be granted.

2. 42 U.S.C. § 2000e–5(f)(1) provides:
 If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge.

3. Letter received by EEOC February 18, 1971:
 . . . The reason I am writing to you is I feel I've been discriminated [sic] against on my job. I was hired as an electrician for the "*Raymond Metals Co*" at *North Point Rd.* and *Wise Ave* in *Baltimore, Md*, in December 1, 1969. I was laid off November 15, 1970, two months before the lay off I submitted a grievance to the Civ-

## MOTION OF RAYMOND METAL PRODUCTS COMPANY

Defendant Raymond Metal bases its motion for summary judgment on at least four separate grounds: the charge upon which the complaint is based is barred as untimely; the scope of the complaint is overbroad in that allegations of sex and race discrimination were not part of the original charge; the Commission's delegation to District Directors of the authority to make "reasonable cause determinations" was unlawful; the EEOC failed to follow its own regulations regarding notification to defendant that conciliation could be reopened prior to litigation. Each of these allegations will be treated separately in the discussion below.

### I.

Defendant's assertion regarding noncompliance with the statutory time frame of Title VII is grounded in the chronology of events which preceded the institution of this action. On February 18, 1971, the Washington Area Office of EEOC received a complaint from Mr. Michael Hadjigeorgalis charging that he was subject to discriminatory employment practices by Raymond Metal in November, 1970,[3] and continuing through February, 1971,[4] because of his Greek origin. On June 30, 1971, EEOC, as re-

il Rights Committee of my local union, because I was being harassed, and was subjected to profanity by my supervisor. After I had submitted the grievance a month later I was laid off according to the maintance [sic] seniority (I worked in the maintance [sic] department) not to the plant seniority. Now I'm being recalled to work by plant seniority and not by maintance [sic] seniority. They said I'm being recalled as a labor [sic] not as an electrician, and if I do not except [sic] the labor job that I have to quit. . . .

4. Letter received by EEOC April 2, 1971:
 . . . They told me, over the phone, that I was being recalled to work as an Electrician but that I may have to go into work as a labor [sic] after two weeks if they didn't have enough work. When I called the co to notified [sic] the company on what date I'd return to work they told me they didn't have a job for me as an

quired by statute, 42 U.S.C. § 2000e–5(c) and (d), deferred the charge to the Maryland Commission on Human Relations, and that agency waived jurisdiction of the complaint on July 23, 1971. EEOC asserts that the charge was officially filed with the Commission on July 26, 1971, although no notice of the charge was served on the defendants at that time. On February 1, 1972, Mr. Hadjigeorgalis submitted an amended charge on the EEOC charge form provided to him, and a copy of the amended charge was served on both the Company and the Union shortly thereafter.

Raymond Metal asserts that the above sequence of events violates the prescribed time limitations of the statute, thus depriving this Court of jurisdiction. Moore v. Sunbeam Corp., 459 F.2d 811 (7th Cir. 1972). The first aspect of defendant's claim is that the charge of Mr. Hadjigeorgalis cannot be recognized by this Court since it was not "filed by the person aggrieved within two hundred and ten days after the alleged unlawful employment practice occurred," as required by the Civil Rights Act of 1964.[5] Raymond Metal asserts that, since the "operative charge" was filed on February 1, 1972, which time was a full year after the last of the alleged dis-

criminatory acts, the charge violates the maximum seven-month period allowed by the old statute prior to the 1972 amendments.

■■ While this Court agrees that the instant case arose under and is governed by the pre-1972 statute, it does not find that the charge of Mr. Hadjigeorgalis is barred as untimely. The letters from Mr. Hadjigeorgalis, received by the Commission on February 18, 1971 and April 2, 1971, are sufficiently precise to constitute an initial filing of the charge. The amended charge of February 1, 1972, relates back to the dates of receipt of these initial letters. The procedure for relating amended charges back to the date of an initial letter from the aggrieved party has been set forth in EEOC's internal regulations.[6] This regulation has been sustained upon challenge, Weeks v. Southern Bell Tel. & Tel. Co., 408 F.2d 228, 230 (5th Cir. 1969), and followed by other federal courts in cases similar to the one at bar. Georgia Power Co. v. Equal Employment Opportunity Commission, 412 F.2d 462, 466 (5th Cir. 1969); Washington v. T. G. & Y. Stores Co., 324 F.Supp. 849, 852 (W.D.La.1971). Since there is no question that the charging party's original letter was filed within the prescribed time, the contention of

Electrician but I was being recalled as a labor [sic] at labor wages. They said I had to take the labor job or quit. According to them I was being recalled as per plant seniority, I wasn't laid off according to plant seniority. They needed labor and they said they couldn't call back laborers with less seniority than me. I found out that they had indeed called back labors [sic] of lower seniority two weeks before they called me back. . . .

5. Prior to the amendments of 1972, Subsection 706(d) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(d) provided:

A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred, except that in the case of an unlawful employment practice with respect to which the person aggrieved has followed the procedure set out in subsection (b) of this section, such charge shall be filed by the person aggrieved within two hundred and ten days after the alleged unlawful employment practice oc-

curred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

6. 29 C.F.R. § 1601.11(b) (1966) provides:

(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is deemed filed when the Commission receives from the person making a charge a written statement sufficiently precise to identify the parties and to describe generally the action, or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments alleging additional acts which constitute unlawful employment practices directly related to or growing out of the subject matter of the original charge will relate back to the original filing date.

Raymond Metal regarding the timeliness of the charge must necessarily fall.

The second aspect of defendant's allegation is that notice of Mr. Hadjigeorgalis' charge was not forwarded to Raymond Metal in a timely manner. At the time this action was commenced there was no statutory or regulatory provision establishing a time limit within which an employer must have been served with a copy of the complaint.[7] Chromcraft Corp. v. Equal Employment Opportunity Commission, 465 F.2d 745, 746 (5th Cir. 1972); International Bro. of Elec. Workers v. Equal Employment Opportunity Commission, 398 F.2d 248, 252 (3rd Cir. 1968). However, Raymond Metal maintains that the standard of unreasonable delay set forth in Section 706 of the Administrative Procedure Act, 5 U.S. C. § 706, should be imposed upon the EEOC notification procedure.

 While counsel for both sides have argued the reasonableness of EEOC's delay in notifying Raymond Metal of the charge, and while the United States Court of Appeals for the Fourth Circuit has given credence to this debate by holding that Section 706 of the Administrative Procedure Act is "tangentially" applicable to EEOC's notification procedures, Chromcraft Corp. v. Equal Employment Opportunity Commission, 465 F.2d 745, 747 (5th Cir. 1972), this Court does not believe that Section of the Administrative Procedure Act has tangential relevance to the timeliness of EEOC's notification procedures. It is evident that Section 706 empowers the federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706. In the instant case, there is no question of compelling the EEOC to take action; it is uncontroverted that Raymond Metal received notification of the complaint in February, 1972. Section 706 was clearly intended for situations where an agency has failed to take appropriate action and not for situations, as in the case at bar, where the agency action has been taken in an allegedly unreasonable time.

In short, this Court finds that both the charge of Mr. Hadjigeorgalis and also EEOC's notice to Raymond Metal of that charge were filed in compliance with the time limitations of Title VII, and summary judgment will be denied as to these contentions.

## II.

In further support of its motion for summary judgment, Raymond Metal asserts that counts II and III of the complaint, alleging discriminatory employment practices on the basis of sex and race, were not part of the original charge by the aggrieved party and therefore cannot be raised in this proceeding. Defendant argues that the variance between the scope of the charge filed by Mr. Hadjigeorgalis and the scope of the complaint deprives this Court of subject matter of jurisdiction of the race and sex allegations.

In deciding the proper scope of a complaint filed under Title VII, the great majority of federal courts to pass on the question have applied the test established in Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970) [hereinafter, "Sanchez"]:

> In other words, the "scope" of the judicial complaint is limited to the "scope" of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. [431 F.2d at 466] (emphasis added).

Defendant argues that allegations of race and sex discrimination cannot reasonably be expected to grow out of a charge based on national origin, and cites cases which have refused to permit a complaint in federal court to raise grounds of discrimination not alleged in the original charge: Equal Employment Opportunity Commission v. General

7. Sections 706(b) and (c) of Title VII as amended by Pub.L.No. 92–261, effective March 24, 1972, now provide that notice of a charge filed with the EEOC must be served upon the person against whom the charge is made within 10 days of the filing.

Electric Co., 376 F.Supp. 757 (W.D.Va. 1974); Equal Employment Opportunity Commission v. New York Times Broadcasting Service, Inc., 364 F.Supp 651 (W.D.Tenn.1973); Equal Employment Opportunity Commission v. Hickey-Mitchell Co., 372 F.Supp. 1117 (E.D.Mo. 1973); Fix v. Swinerton & Wallberg Co., 320 F.Supp. 58 (D.Colo.1970).

All of the cases cited by defendant rely on the basic test set forth in *Sanchez*. Regrettably, a trend seems to be developing in some federal courts, and followed by counsel for Raymond Metal in the instant case, to overlook the emphasis which the *Sanchez* court placed on the EEOC investigation, rather than on the charge, as the primary determinant of the proper scope of a subsequent civil action. Placed in context, the *Sanchez* rule cited above reads as follows:

> In other words, the "scope" of the judicial complaint is limited to the "scope" of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.
>
> The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is *not* filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC *fails* to achieve voluntary compliance will the matter ever become the subject of court action. *Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation.* [431 F.2d at 467] (emphasis added, last sentence only).

To evaluate the proper scope of the judicial complaint, as does defendant in the instant case, entirely in terms of the allegations "which can reasonably be expected to grow out of the charge" is to emphasize an analysis based on shades of Hadley v. Baxendale, 9 Exch. 341 (1854),[8] rather than on the Congressional purpose and intent in enacting Title VII. In establishing the above rule, the *Sanchez* court expressly states that it was affirming the conclusion reached in King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga.1968), wherein the District Court held:

> This rule, broadly speaking, in effect limits the civil action to that range of issues that would have been the subject matter of the conciliation efforts between EEOC and the employer. If the civil action were not so limited, then the primary emphasis of this Title would be circumvented, i. e., an emphasis upon voluntary settlement of all issues without an action in the District Court. [295 F.Supp. at 947.]

Thus, an examination of the policy considerations behind the Sanchez rule convinces this Court that the judicial complaint in an EEOC civil action may properly embrace, in addition to those allegations contained in the initial charge, any allegation of other discriminatory employment practices for which there has been an investigation, a determination of reasonable cause, and a genuine attempt at conciliation. Other courts have reached the same conclusion:

> The statutory nexus between the charge and the Commission's subsequent proceedings does not, however, warrant fragmenting those proceedings to a degree which subverts the overall objective of eliminating discriminatory employment practices. For this reason, the courts that have interpreted Title VII have permitted both individual litigants and the Commis-

---

8. In Hadley v. Baxendale, *supra,* it was established that contract damages are recoverable only for those injuries that the defendant could reasonably expect to result from his breach of contract at the time the contract was made.

sion to challenge employment practices which the individual charge, strictly construed, did not place in controversy.

. . . . . .

In summary, the scope of this case will be limited to the scope of the Commission's determination of reasonable cause. [Equal Employment Opportunity Commission v. duPont Co., 373 F.Supp. 1321, 1334, 1338 (D. Del.1974)]

In passing, this Court notes that its ruling on the proper scope of the judicial complaint is not inconsistent with this Court's holding in the recent case of Equal Employment Opportunity Commission v. Western Electric Co., Inc., 382 F.Supp. 787 (D.Md.1974). In that case, this Court granted summary judgment for defendant as to an allegation in the judicial complaint (based on sex discrimination) which was not part of the original charge (based on race discrimination). The reason for limiting the scope of the complaint in the *Western Electric* case was the failure of EEOC to fully investigate and conciliate the allegation of sex discrimination prior to bringing suit in federal court, as is clearly required by Title VII. The recent *Western Electric* decision of this Court is distinguishable from the instant case on the same grounds that the District Court in Latino v. Rainbo Bakers, Inc., 358 F.Supp. 870 (D.Colo. 1973) distinguished the case of Fix v. Swinerton, 320 F.Supp. 58 (D.Colo.1971) (relied on by defendants):

The complaint filed with the court [in Fix v. Swinerton] asserted that the grounds for discrimination were plaintiff's religion and national origin, but the complaint and investigation before the administrative agencies had been limited to discrimination because of plaintiff's national origin. Judge Chilson thus granted a motion to strike the claim of discrimination on the basis of religion, holding that this ground could not be asserted for the first time in the district court.

The difference between this case and *Fix* is that, in *Fix*, the charge of

religious discrimination had never been presented to the EEOC, and the Commission had not considered or passed upon the issue. Here, although plaintiff did not initially charge sexual discrimination, the EEOC investigation disclosed what the Commission regarded as grounds for believing that Rainbo had discriminated against plaintiff because of her sex. The Commission also explicitly found that Rainbo had violated Title VII of the Act by "maintaining sex segregated job classifications." [358 F.Supp. at 871].

■ This Court recognizes that a separate charge was never filed either by EEOC or by the aggrieved party as to the counts of race and sex discrimination in the judicial complaint. Title VII establishes five procedural steps which must be followed prior to bringing a civil action against an employer: charge; notice of charge; investigation; determination of reasonable cause; and an endeavor to conciliate. 42 U.S.C. § 2000e–5(b). The purpose of this procedure is twofold. First, it notifies the charged party of the violation. Second, and more important, it permits the EEOC to consider all the charges and to resolve them through conciliation and voluntary compliance. Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969); Latino v. Rainbo Bakers, *supra*, Butler v. Locals 4 and 269, AFL–CIO, 308 F.Supp. 528, 531 (N.D. Ill.1969).

■ In the opinion of this Court, the congressional purpose behind the five step procedure outlined in 42 U.S.C. § 2000e–5(b) is fully satisfied where, as in the instant case, EEOC discovers additional grounds of discrimination during the course of its investigation and pursues these grounds through the determination of reasonable cause and conciliation process, notwithstanding that a formal charge was never filed as to the additional counts of discrimination. EEOC does, of course, have standing to seek judicial relief against unfair employment practices even where there is

no relation between the alleged discrimination and a particular aggrieved party.[9] To grant defendant's motion for summary judgment as to the sex and race counts of the complaint would only require EEOC to repeat the investigation, determination of reasonable cause, and conciliation process which it has already undertaken, with the pro forma addition of an official charge filed by a member of the Commission. Such a decision would elevate a technical construction of the statute at the expense of congressional policy and intent.

 In Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969), the Court of Appeals for the Seventh Circuit reached a similar conclusion:

> Colgate argues that the language of 42 U.S.C. § 2000e–5(e) requires that each person seeking recovery must first file a charge with the EEOC and then formally join in or institute suit for recovery. This is not required in order to serve the policy behind that section. The purpose of the section (as observed above in discussing the Union) is to provide for notice to the charged party and to bring to bear the voluntary compliance and conciliation functions of the EEOC. [416 F.2d at 720].

Where the essential purpose and policy considerations behind the administrative procedure outlined at 42 U.S.C. § 2000e–5(b) have been satisfied, this Court does not believe that it was the intent of Congress to require the filing of a new charge for each new discriminatory employment practice uncovered during the EEOC investigation, especially where such a decision would lead to repetitive proceedings by an agency whose limited resources are already greatly overburdened.[10]

This Court recognizes that another court of the Fourth Circuit has recently reached a contrary conclusion as to the proper scope of the judicial complaint in an EEOC civil action. Equal Employment Opportunity Commission v. General Electric, 376 F.Supp. 757 (W.D.Va. 1974) [hereinafter, *"General Electric"*]. In attempting to distinguish the case of Latino v. Rainbo Bakers, Inc., *supra*, the *General Electric* court created a new test for determining the proper scope of the judicial complaint:

> The obvious distinguishing difference between *Latino* and the case at bar is, of course, that the EEOC there found reasonable cause to believe that the charging party had been the victim of sexual discrimination whereas in this case there is not even a potential relationship between the charging parties and the allegations of sexual discrimination against females. . . . [I]n the opinion of the court, in addition to notice and an opportunity to conciliate, Title VII contemplates at least a potential link between the allegations in the complaint and the charging parties. Accordingly, the fact that the allegations of sex discrimination against females in this complaint were not potentially discriminatory against the charging parties leads this court to conclude that the EEOC is without authority to judicially pursue these allegations in this complaint. [376 F.Supp. at 762]

---

**9.** 42 U.S.C. § 2000e–5(b) expressly authorizes the Commission to file charges on its own behalf covering all manner of unlawful employment practices.

**10.** The doctrine that the Commission may take the charge as a starting point and include in its deliberations all facts developed in the course of a reasonable investigation of that charge is supported by a number of considerations. First, in the overall framework of Title VII, an individual charge operates not so much as a formal accusatory instrument like an indictment but, rather, as the first step in an investigatory process that must be free to define relevant areas of inquiry as it unfolds. To mandate blinders for Commission investigators or to require that they pursue any additional discrimination disclosed by their investigation in a separate Commissioner's charge would be to sanction a waste of valuable and limited resources.

Equal Employment Opportunity Commission v. duPont Co., 373 F.Supp. 1321, 1335 (D. Del.1974).

In the view of this Court, a requirement that the scope of the complaint be limited to those allegations which are potentially discriminatory against the charging parties has no statutory basis in Title VII, nor is any referred to in the *General Electric* opinion. Moreover, where EEOC is the original charging party and the allegations of the charge are broadened during the EEOC investigation to include additional and unrelated counts of discrimination, the test set out in *General Electric* becomes totally unmanageable; it is without meaning to require that additional allegations of discrimination be potentially discriminatory against EEOC.

Finally, it is argued by Raymond Metal that the failure to allege sex and race discrimination in the original charge deprived the Maryland Commission on Human Relations of an opportunity to pass upon these aspects of the complaint, as required by Title VII. Since EEOC did refer the original charge to the state civil rights agency prior to taking jurisdiction of the case, Raymond Metal is arguing, in essence, that EEOC must re-refer the case to the state agency whenever its investigation discloses a ground of discrimination not already passed upon by the state. This Court does not believe that re-referral to the applicable state agency is required by Title VII. This identical issue was addressed in Latino v. Rainbo

Bakers, Inc., *supra*, and this Court follows, without repeating, both the conclusion and the rationale of that court.[11] For the reasons stated above, summary judgment will be denied as to count II.

### III.

The primary thrust of defendant's motion for summary judgment is the argument that the authority to make determinations of reasonable cause pursuant to 42 U.S.C. § 2000e–5(b)[12] must be exercised by the five-man Commission itself and cannot be delegated to District Directors of the EEOC. Title VII clearly mandates, as one of the procedural steps prerequisite to litigation, that a determination be made that there is reasonable cause to believe that the charge against the employer is true.[13]

In the instant case, the determination of reasonable cause was made on October 27, 1972, by Walter Dickerson, District Director of the Baltimore EEOC office. Raymond Metal argues that the determination of reasonable cause is an adjudicatory function involving a degree of judgment and discretion which Congress did not intend the Commission to delegate to subordinate officials. Therefore, it is argued, the recent EEOC regulation purporting to make such delegation, 29 C.F.R. § 1601.19b(d), is unlawful and the District Director's reliance on same in the case at bar is without effect.

11. Additionally, this Court notes that it is the referral provision of 42 U.S.C. § 2000e–5(d), rather than § 2000e–5(c), which governs charges which have been raised by the Commission. Unlike 42 U.S.C. § 2000e–5(c), which governs charges filed by an aggrieved party, 42 U.S.C. § 2000e–5(d) does not mandate referral to the state agency unless, after notification, the state agency so requests. The difference between the two provisions reveals a congressional intent to make referral to the state agency a more optional, and less mandatory, procedure in the case of charges raised by the EEOC itself. Since the allegations of sex and race discrimination in the instant case would be governed by 42 U.S.C. § 2000e–5(d), the conclusion of the court in Latino v. Rainbo Bakers, Inc., *supra*, against re-referral is all the more compelling.

12. 42 U.S.C. § 2000e–5(b) provides:
. . . If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.

13. 42 U.S.C. § 2000e–5(b); Equal Employment Opportunity Commission v. duPont Co., 373 F.Supp. 1321 (D.Del.1974); Equal Employment Opportunity Commission v. Western Electric Co., Inc., 364 F.Supp. 188 (D.Md.1973); Equal Employment Opportunity Commission v. Container Corp. of America, 352 F.Supp. 262 (M.D.Fla.1972).

Contrary to the pleadings of the parties, the propriety of authorizing District Directors to make reasonable cause determinations is more properly characterized as a problem of subdelegation. "By subdelegation is meant the transmission of authority from the heads of agencies to subordinates." [14] In the present case, this Court is asked to review the legality of the EEOC regulation published at 29 C.F.R. § 1601.19b (d) which subdelegates to District Directors the authority to make certain determinations under Title VII. 29 C. F.R. § 1601.19b(d) provides:

The District Directors, or other designated officers, on behalf of the Commissioner, may, upon completion of an investigation, dismiss charges, make and issue determinations as to reasonable cause, and serve a copy thereof upon the parties, and make and approve conciliation agreements in those cases where such authority has been delegated to them by the Commission. The determination is final when issued; therefore, requests for reconsideration will not be granted. The District Directors, or other designated officers, may, however, on their own motion, reconsider their determination at any time, and when they do so, they shall promptly notify the aggrieved person, the person making the charge on behalf of the aggrieved person, where applicable, and the respondent, or in the case of a charge filed, under § 1601.10, the person aggrieved, if known, and the respondent of their intention to reconsider their determination, and of their subsequent decision on reconsideration.[15]

In his well-recognized treatise on administrative law, Professor Kenneth Culp Davis has collected some of the general policy considerations which should guide the courts where administrative subdelegation has been challenged.

One fundamental of the subject was stated by Commissioner Eastman of the ICC in testifying before a congressional committee in 1933: "Sound principles of organization demand that those at the top be able to concentrate their attention upon the larger and more important questions of policy and practice, and that their time be freed, so far as possible, from the consideration of the smaller and less important matters of detail." . . .

. . . . . .

The Attorney General's Committee, for instance, having developed the kind of factual understanding of administrative operations that can seldom be conveyed to a court, strongly emphasized the need for a larger degree of subdelegation. The Committee asserted that "the major work of the heads of an agency is normally supervision and direction. . . . When agency heads permit themselves to be overwhelmed by detail, they rob themselves of time essential for their most important tasks. . . . Not only internal management, but nearly every phase of the typical agency's activity demands delegation of authority." . . .[16] (Footnotes omitted.)

Before applying these general principles, it is important to recognize the degree to which subdelegation has taken place in the instant case. Delegation is a matter of degree. In Cudahy Packing Co. v. Holland, 315 U.S. 357, 369, 62 S.Ct. 651, 657–658, 86 L.Ed. 895 (1942), Justice Douglas, dissenting,[17] wrote:

Delegation is a matter of degree. An authority need not be delegated com-

14. 1 Davis, Administrative Law Treatise, § 9.01 (1958).

15. 37 Fed.Reg. 20165, Sept. 27, 1972.

16. 1 Davis, Administrative Law Treatise, § 9.01 (1958).

17. In the view of Prof. Davis, the dissent in Cudahy Packing Co. v. Holland, *supra*, has now become the law. "Hardly surprising is the movement away from the Cudahy case, including a later decision by the Supreme Court. Somewhat surprising is a lack of specific overruling. The remnants of Cudahy the Supreme Court has left standing are customarily rejected by the lower courts." 1 Davis, *supra*, n. 13, § 9.04 (footnotes omitted).

pletely or not at all. It is sufficient that the administrative officer supervise and direct the execution of his duties. So far as the subpoena power is concerned, it would seem that the Administrator has satisfied all statutory demands in this situation by his selection of the limited group which can issue subpoenas, by formulating the policy to guide them, and by ratifying a subpoena issued by his subordinate.[18]

Clearly in the present case subdelegation by the Commission has not been one hundred per cent. The regulation authorizes District Directors to make reasonable cause determinations only "in those cases where such authority has been delegated to them by the Commission." 29 C.F.R. § 1601.19b(d). Section 501 of the EEOC interpretive manual clarified this limitation by restricting the authority of District Directors to those cases which fall within established Commission Decision Precedent (CDP). If the factual setting of a particular reasonable cause determination does not fall within the scope of, or is not substantially the same as, a prior, published determination by the Commission, then the District Director lacks authority under 29 C.F.R. 1601.19b(d) and the determination must be made by the Commission itself. Thus, this Court is reviewing, not a total abdication to District Directors, but only that degree of subdelegation circumscribed by the Commission Decision Precedent.

Raymond Metal argues that the illegality of the subdelegation to District Directors is revealed, in part, by analogy to the legislative history of the National Labor Relations Board. In 1959, Section 3(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 153(b),[19] was amended by Subsection 701(b) of the Labor-Management Reporting and Disclosure Act (LMRDA) (P.L. 86–257, 73 Stat. 542) to permit the National Labor Relations Board (NLRB) to delegate to its Regional Directors certain powers and duties under Section 9 of the NLRA. Since the NLRB was required to seek a congressional amendment to its enabling legislation before Section 9 powers could be subdelegated to Regional Directors, defendants in the instant case assert that the EEOC must also request from Congress an express grant of the authority to subdelegate to District Directors functions and duties under Section 706 (b) of Title VII.

 This Court is unable to find merit in the above argument. The analogy breaks down because NLRB's powers under Section 9 of the NLRA are adjudicatory in nature and therefore fundamentally different from the internal administrative procedures required of the EEOC by Section 706(b) of Title VII. An adjudicatory action is one which determines "the respective rights and claims of the parties."[20] While an NLRB determination under Section 9 as to the appropriate unit for collective bargaining clearly affects the respective rights

18. This aspect of Justice Douglas' dissent in Cudahy Packing Co. v. Holland, supra, expressly became the majority view in National Labor Relations Board v. Duval Jewelry Co., 357 U.S. 1, 5, 78 S.Ct. 1024, 1027, 2 L. Ed.2d 1097 (1958).

19. 29 U.S.C. § 153(b), as amended, provides: The Board is also authorized to delegate to its regional directors its powers under section 159 of this title to determine the unit appropriate for the purpose of collective bargaining, to investigate and provide for hearings, and determine whether a question of representation exists, and to direct an election or take a secret ballot under subsection (c) or (e) of section 159

of this title and certify the results thereof, except that upon the filing of a request therefor with the Board by any interested person, the Board may review any action of a regional director delegated to him under this paragraph, but such a review shall not, unless specifically ordered by the Board, operate as a stay of any action taken by the regional director.

20. Black's Law Dictionary (4th ed. 1957) defines "adjudication" as "[t]he giving or pronouncing a judgment . . .." "Judgment" is defined as a decision " . . . upon the respective rights and claims of the parties . . .." (at 63 and 976 respectively).

and claims of the parties, neither EEOC's investigation, determination of reasonable cause, or conciliation endeavor under Section 706(b) has such an effect. The determination of reasonable cause in an EEOC proceeding most closely resembles a finding of probable cause by a Grand Jury; [21] it is merely a procedural process which sets the stage for an adjudication of substantive rights by the United States District Court should conciliation efforts fail. It is of no bearing on the legality of the EEOC procedural regulation challenged in this case, 29 C.F.R. § 1601.-19b(d), that NLRB petitioned Congress in 1959 for authority to subdelegate an adjudicatory power which the EEOC does not possess.

Regrettably, Congress did not directly address the problem of subdelegation either when the Civil Rights Act of 1964 was passed or through the 1972 amendments to that Act, Public Law 92–261 (March 24, 1972). While the legality of subdelegation by a particular federal agency is primarily a function of congressional intent, the omission of any specific grant of the power to delegate should not be construed as a denial of that power. Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 67 S. Ct. 1129, 91 L.Ed. 1375 (1947).[22] Professor Davis supports this view:

The extent of permissible subdelegation by federal officers depends primarily upon the intent of Congress. But statutes bearing upon the problem of subdelegation have been adopted over a period of more than a century and a half, and express statutory provisions bearing on the problem seem almost completely haphazard.[23]

Notwithstanding the lack of express authorization, congressional intent to permit subdelegation of certain EEOC administrative functions can be inferred on three separate grounds. First, it is evident that Congress did not intend that the Commission itself should make all of the essential findings which are intrinsically related to the determination of reasonable cause. Section 706(b) of the Civil Rights Act expressly authorizes the Commission to rely on the factual determinations of other agencies:

In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. [42 U.S.C. § 2000e–5(b)].

Defendant argues that the determination of reasonable cause requires an exercise of such judgment and discretion that Congress could not have intended the Commission to subdelegate this important function to other officials not specifically appointed, as are the five members of the Commission, by the President with the advice and consent of the Senate. 42 U.S.C. § 2000e–4. The above provision from Section 706(b) of the Act, however, severely undermines this argument. The State authority to which EEOC must initially defer jurisdiction of a charge [24] could make its own determination of reasonable cause, and

21. Smith v. Universal Services, Inc., 454 F.2d 154, n. 1, (5th Cir. 1972).

22. In Fleming v. Mohawk Wrecking & Lumber Co., *supra*, the Supreme Court declared that " . . . a rule-making power may itself be an adequate source of authority to delegate a particular function, unless by express provision of the Act or by implication it has been withheld." *Id.* 331 U.S. at 121, 67 S.Ct. at 1134. Thus, EEOC's authority to subdelegate gains support from the general rule-making power which Congress has clearly provided for the Commission. 42 U.S.C. § 2000e–12.

23. 1 Davis, Administrative Law Treatise, § 9.02 (1958).

24. Where a state or local authority has been established to remedy unlawful employment practices, Title VII requires that EEOC defer the charge to such authority before taking jurisdiction of the complaint. 42 U.S.C. § 2000e–5(c) and (d).

the Commission would be required to accord substantial weight to this finding. While the provision from Section 706 (b) cited above is not a specific grant of the power to subdelegate, it strongly supports the view that the Commission itself was not intended by Congress to be the exclusive arbiter of the reasonable cause determination.

Second, as a pragmatic consideration, Congress must have recognized the administrative impossibility of requiring the five men of the Commission itself to carry out the initial investigation, reasonable cause determination, and conciliation effort prescribed by Section 706(b) for each of the approximately 56,000 charges filed annually with EEOC.[25] Contrary to their initial pleadings, defendants have conceded the infeasibility of requiring the Commission itself to undertake all conciliation efforts.[26] This Court cannot believe that Congress intended that EEOC's conciliation endeavors, which embody the primary purpose and philosophy of the Act,[27] should be delegable while the determination of reasonable cause, often involving less judgment and discretion, should not be delegable. The requirements of investigation, determination of reasonable cause, and conciliation are all

set forth in the same paragraph of the Act. 42 U.S.C. § 2000d–5(b). This provision clearly contemplates an integrated system for the administrative processing of a complaint. It is an offense to both common sense and pragmatic administration to say that one part of this integrated administrative scheme can be delegated while another cannot. To hold that the determination of reasonable cause may not be delegated would lay precedent for the totally unreasonable proposition that investigation of a charge and conciliation efforts must also be performed by the five-man Commission itself.

Third, a congressional intent to permit subdelegation of all the steps in the administrative process prior to bringing suit can be inferred from the legislative history of the 1972 amendments to Title VII. The central issue during congressional debates on the 1972 amendments was whether the Commission should have cease and desist powers similar to those of the National Labor Relations Board (NLRB). The Hawkins bill, H.R. 1746,[28] which was eventually defeated, would have given EEOC such additional cease and desist enforcement powers.[29] Subsection 8(h) of the Hawkins bill expressly addressed the delega-

25. In FY 1974, 56,953 charges were received by EEOC. In 5,270 of these charges, no reasonable cause was found; 8,678 of these charges were conciliated; 23,778 of these charges were administratively closed. The remainder, 19,227 charges, were backlogged, bringing the total number of EEOC backlogged charges to 97,761. Statement of EEOC Chairman Powell before House Labor Subcommittee on Equal Opportunities, BNA Daily Labor Report, No. 181, D–3 (Sept. 17, 1974).

26. At the hearing counsel for Raymond Metal stated: "Yes, Your Honor. I'm not saying that the conciliation, for instance, would have to be undertaken by the Commission itself." Transcript, p. 10.

27. Sanchez v. Standard Brands, Inc., 431 F. 2d 455 (5th Cir. 1970); Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969); International Brotherhood of Elec. Workers, Local Union No. 5 v. EEOC, 398 F.2d 248, (3rd Cir. 1968); Latino v. Rainbo Bakers, Inc., 358 F.Supp. 870 (D.Colo.1973); King

v. Georgia Power Co., 295 F.Supp. 943 (N. D.Ga.1968).

28. H.R.1746 was introduced in the House by Congressman Hawkins on January 22, 1971.

29. Section 4 of H.R. 1746 would have amended Section 706(h) of the Civil Rights Act of 1964 as follows:

(h) If the Commission finds that the respondent has engaged in an unlawful employment practice, the Commission shall state its findings of fact and shall issue and cause to be served on the respondent and the person or persons aggrieved by such unlawful employment practice an order requiring the respondent to cease and desist from such unlawful employment practice and to take such affirmative action, including reinstatement or hiring of employees, with or without backpay (payable by the employer, employment agency or labor organization, as the case may be, responsible for the unlawful employment practice), as will effectuate the policies of this title: . . ..

tion problem.[30] The purpose of subsection 713(c) was to specifically delineate those powers of the Commission which were not delegable. Except for powers expressly delineated, the Hawkins bill provided that all other functions, duties and powers of the Commission were delegable.

Upon rejection of the proposal to give EEOC cease and desist enforcement powers, it was no longer necessary for Congress to carefully define the scope of EEOC's delegation authority. It was presumed that all of EEOC's other ". . . functions, duties, and powers with respect to investigating, conciliating, hearing, determining, ordering, certifying, reporting, or otherwise acting as to any work, business, or matter . . ." would remain delegable.[31] While a defeated bill cannot reveal substantive congressional intent one way or the other, it can indicate, as in the instant case, a procedural policy to assume that all functions, duties and powers are delegable unless specifically delineated to the contrary. Subsection 8(h) of the Hawkins bill demonstrates that the delegation problem was not overlooked by Congress and that Congress would have expressly addressed any particular powers or functions of the Commission wherein it was intended that the authority to delegate be withheld. In the absence of such limiting language, the inference is clear that the Commission's power to subdelegate determinations of reasonable cause was not withheld.

■ While this Court believes, as indicated by the preceding analysis, that the Commission has the power to subdelegate the mandatory administrative procedures prescribed by 42 U.S.C. § 2000e-5(b), including the determination of reasonable cause, it is an entirely separate question whether EEOC's recent regulation, 29 C.F.R. § 1601.19b(d), constitutes a proper exercise of this power. In particular, the Court notes that there is no opportunity for review of the District Director's determination of reasonable cause. The challenged regulation provides that "[t]he determination is final when issued." [32] This Court believes that the failure to provide for review of the District Director's determination constitutes a fatal defect in the Commission's exercise of its subdelegation power, thereby rendering the regulation at 29 C.F.R. § 1601.19b(d) void and unlawful.

In several cases where the Supreme Court has upheld the validity of subdelegation, the opinion of the Court has been premised on the provision of an opportunity for review by the delegating body. In National Labor Relations Board v. Duval Jewelery Co., 357 U.S. 1, 78 S.Ct. 1024, 2 L.Ed.2d 1097, (1958), the Supreme Court upheld NLRB's delegation to Regional Directors of the authority to rule on motions to revoke subpoenas *duces tecum* in representation proceedings. In reaching this conclusion, the Court stated:

> There is a degree of delegation of authority in connection with a mo-

---

30. Section 8(h) of H.R.1746 would have amended Section 713(c) of the Civil Rights Act of 1964 as follows:
 (c) *Except* for the powers granted to the Commission under subsection (h) of section 706, the power to modify or set aside its findings, or make new findings, under subsections (i) and (k) of section 706, the rulemaking power as defined in subchapter II of chapter 5 of title 5, United States Code, with reference to general rules as distinguished from rules of specific applicability, and the power to enter into or rescind agreements with State and local agencies, as provided in subsection (b) of section 709, under which the Commission agrees to refrain from processing a charge

in any case or class of cases or under which the Commission agrees to relieve any person or class of persons in such State or locality from requirements imposed by section 709, *the Commission may delegate any of its functions, duties, and powers to such person or persons as the Commission may designate by regulation,* including functions, duties, and powers with respect to investigating, conciliating, hearing, determining, ordering, certifying, reporting, or otherwise acting as to any work, business, or matter: . . . .
[Emphasis added.]

31. *Id.* in text.

32. *See* n. 14, *supra,* and accompanying text.

tion to revoke a subpoena duces tecum. The Board's Rules and Regulations provide that a motion to revoke is first heard by the regional director or by the hearing officer. But the ruling of that subordinate official is not final. Machinery is provided in the Rules for an appeal from that ruling to the Board. [*Id.*, 353 U.S. at 5, 78 S.Ct. at 1027] (footnotes omitted).

Similarly, in upholding the Attorney General's delegation under the Immigration Act of his authority to suspend, "in his discretion," [33] deportation of any alien who meets specified statutory requirements, the Supreme Court expressly noted that any exercise of the delegated authority could be reviewed by the Board of Immigration Appeals.[34]

In a 1961 address to Congress, President Kennedy echoed the limitations which the Supreme Court had placed on the exercise of the subdelegation power:

> The reduction of existing delays in our regulatory agencies requires the elimination of needless work at their top levels. . . . [U]nnecessary and unimportant details occupy far too much of the time and energy of agency members, and prevent full and expeditious consideration of the more important issues.
>
> The remedy is a far wider range of delegations to smaller panels of agency members, or to agency employee boards, and to give their decisions and those of the hearing examiners a considerable degree of finality, conserving the full agency membership for issues of true moment. *Such delegation would not be an abnegation of responsibility if the agency retained a discretionary right of review of all such decisions, exercisable either upon its own initiative or upon the petition of a party demonstrating to the agency that the matter in issue is of such substantial importance that it calls for determination at the highest agency level.*

[107 Cong.Rec. 5847, 5849 (1961)]. (Emphasis added.)

Contrary to President Kennedy's caveat on the abnegation of responsibility, the regulation challenged in the instant proceedings expressly denies the Commission the right to review the District Director's determination of reasonable cause, either upon its own initiative or upon the petition of an aggrieved party. EEOC argues, however, that a review of the District Director's determination of reasonable cause did take place, intrinsically, when the Commission itself made the decision to bring suit in the case at bar. EEOC's position is based on the proposition that the Commission's decision to sue in a particular case necessarily implies a finding that the case has merit, and such a finding is analagous, if not identical, to a determination of reasonable cause to believe the charge is true.

■■■ This Court is unable to accept EEOC's position. Even assuming that the Commission's decision to sue in a particular case does constitute inherently a review of the reasonable cause determination, this Court would be com-

---

33. The Immigration Act provides that " . . . the Attorney General may, in his discretion, suspend deportation . . . " of any alien. 8 U.S.C. § 1254(a). The fact that the Supreme Court upheld subdelegation of this discretionary power in Jay v. Boyd, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1956) is responsive to defendant's argument in the instant case that EEOC's determination of reasonable cause is inherently non-delegable because it involves the exercise of judgment and discretion.

34. Petitioner does not suggest, nor can we conclude, that Congress expected the Attorney General to exercise his discretion in suspension cases personally. There is no doubt but that the discretion was conferred upon him as an administrator in his capacity as such, and that under his rule-making authority, as a matter of administrative convenience, *he could delegate his authority to special inquiry officers with review* by the Board of Immigration Appeals.
*Id.*, 351 U.S. at 351 n. 8, 76 S.Ct. at 923 n. 8. (Emphasis added.)

pelled to void the Commission's subdelegation procedure because there is no provision anywhere in Title VII or in EEOC's internal regulations mandating, upon request of an aggrieved respondent or otherwise, a review of the record by the Commission before institution of a civil action. While affidavits in the instant case indicate that a review of the record by the Commission did take place as to the charge of Mr. Hadjigeorgalis, such a review was the result of an informal policy which the Commission appears to have adopted in most cases.

▮▮▮ There is only one provision of Title VII which could possibly be construed as requiring a review of the record by the Commission itself prior to the institution of a civil action. 42 U.S.C. § 2000e–5(f)(1) provides:

> If . . . the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. . . .

As evidenced by the above language, and by the corresponding EEOC regulation, 29 C.F.R. § 1601.25b(a), it is the inability to secure a satisfactory conciliation agreement, and not a review of the record by the Commission, which triggers litigation. The above provision, 42 U.S.C. § 2000e–5(f)(1), cannot reasonably be construed as a mandate that the entire record be reviewed by the Commission prior to the institution of a civil action.

▮▮▮ The Commission's inability to secure an acceptable conciliation agreement is the only express statutory precondition to the Commission's power to bring suit.[35] 42 U.S.C. § 2000e–5(f)(1). Such a condition was a sufficient safeguard against ill-founded litigation because the approval or disapproval of a conciliation agreement was made by the Commission itself as the last step in a sequential administrative process.[36] The regulation challenged in this proceeding, however, appears to subdelegate to District Directors the authority to determine that an acceptable conciliation agreement cannot be secured,[37] thereby giving District Directors *de facto* power to institute a civil action. 29 C.F.R. § 1601.19b(d) provides:

> The District Directors, or other designated officers, on behalf of the Commissioner, may, upon completion of an investigation, dismiss charges, make and issue determinations as to reasonable cause, and serve a copy thereof upon the parties, *and make and approve conciliation agreements* . . . . [Emphasis added.]

While defendant in the case at bar has challenged only the subdelegation of the determination of reasonable cause, the Court believes that a more important problem is raised by subdelegation of the determination that an acceptable conciliation agreement cannot be secured. It is this latter determination which provides the statutory trigger for litigation. 42 U.S.C. § 2000e–5(f)(1). When the subdelegation regulation at 29 C.F.R. § 1601.19b(d) is read together with 42 U.S.C. § 2000e–5(f)(1), EEOC

---

35. The Court notes that by judicial construction various steps in the administrative processing of a charge, 42 U.S.C. § 2000e–5(b), have also been interpreted as jurisdictional preconditions to the institution of a civil action. *See* cases cited, *supra*, n. 13.

36. The Commission's power of suit and its administrative process were envisioned by Congress as sequential steps in a unified scheme for securing compliance with Title VII. Equal Employment Opportunity Commission v. duPont Co., 373 F.Supp. 1321 (D.Del.1974).

37. While 29 C.F.R. § 1601.19b(d) speaks only of the District Director's authority to "approve conciliation agreements," it is clear from the record of the instant case that EEOC interprets this regulation to include the authority to disapprove conciliation agreements as well. It was from the office of the District Director that defendant Union received notice that their offer to conciliate was not acceptable to EEOC.

District Directors, have, in effect, been given the power to bring suit. This finding is reinforced by the complete absence in EEOC's regulations of any provision requiring the Commission to review determinations which are subdelegated to District Directors by 29 C.F.R. § 1601.19b(d). While the Commission may well have the power to subdelegate the determination that an acceptable conciliation agreement cannot be secured,[38] the exercise of this power without provision of an opportunity for mandatory review by the Commission itself violates the unified administrative scheme contemplated by Title VII as well as sound principles of administrative law. EEOC's assertion that an informal, non-mandatory policy has been adopted whereby the Commission does, in most cases, review the record before litigation is commenced is not an adequate response.

█ Thus, because of the complete absence of any regulation requiring the Commission to review, upon motion of an aggrieved party or otherwise, any of the administrative determinations which are subdelegated to District Directors by 29 C.F.R. § 1601.19b(d), this Court is compelled to conclude that the same regulation is void and unlawful.

### IV.

█ Finally, Raymond Metal argues, as a separate ground in support of its motion for summary judgment, that EEOC failed to follow its own regulation, 29 C.F.R. § 1601.23, which requires that, in addition to notifying a respondent that conciliation has been unsuccessful, notice must also be given that conciliation efforts can be resumed within a specified time upon the respondent's written request. The record reveals that such an opportunity to reopen the conciliation discourse was not presented to either of the defendants in the instant proceeding. It was well emphasized by this Court in Equal Employment Opportunity Commission v.

Western Electric Co., Inc., 382 F.Supp. 787 (D.Md.1974), that such a deviation from the statutory mandate cannot be tolerated. In granting defendant's motion as to this ground, it is unnecessary to do more than follow, without repeating, both the conclusion and the rationale of this Court in *Western Electric, supra.*

For the reasons stated above, it is this 26th day of November, 1974, ordered:

1. That the Motion for Summary Judgment of defendant United Steelworkers of America be, and the same hereby is, granted;

2. That the Motion for Summary Judgment of defendant Raymond Metal Products Company be, and the same hereby is, granted as to claims III and IV;

3. That the Motion for Summary Judgment of defendant Raymond Metal Products Company is, in all other respects, denied;

4. That the Equal Employment Opportunity Commission be, and the same hereby is, enjoined from bringing any civil action under Section 706(f)(1) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1), which action is based, in whole or part, upon any determination made by EEOC District Directors pursuant to 29 C.F.R. § 1601.19b(d), until such time as said regulation is revised to provide, upon the request of any aggrieved party, opportunity for a mandatory review by the Commission itself of any or all parts of the administrative record prior to the institution of a civil action;

5. That the Commission shall publish the revised regulation required by paragraph 4 of this Order no later than February 27, 1975;

6. That prior to February 27th, 1975, a civil action which otherwise complies with the requirements of Title VII may be brought against any party who has been given adequate notice that, upon

---

38. *See* discussion, *supra,* n. 18–29 and accompanying text.

request, determinations made by District Directors in proceedings against said party are reviewable by the Commission, if such review does take place prior to the institution of a civil action.